### SCHWARTZ *v.* GERHARDT.

[ 75 Pac. 698.]

Liability of Foreign Trustees to Domestic Courts.

1. A trustee appointed by a foreign court is amenable only to that court, and the fact that his residence is in another jurisdiction will not confer authority there to control the administration of his trust, or to require accountability for the trust property.

Construction of Decree of Foreign Court.

2. The decree of a court in Germany declaring that the will of plaintiffs' grandfather was void in so far as it attempted to deprive plaintiffs' father of the administration and enjoyment of three-fourths of plaintiffs' inheritance during

their minority, and further declaring that the father was entitled to such administration and enjoyment until the plaintiffs should have completed their eighteenth year, and directing the surrender to the father of such three-fourths, may be here construed as having finally disposed of the property, so that it then ceased to be under the control of the foreign court, and is now subject to the control of the American courts, it appearing that the inheritance was converted into money and brought within this State.

BURDEN OF PROOF AS TO CONSTRUCTIVE TRUST.

3. In suits to establish and enforce constructive trusts, it must clearly appear that the trustee has received the money of the complainant, and that it was used to purchase the property claimed.

RIGHT TO FOLLOW TRUST PROPERTY—IDENTITY OF FUNDS.

4. A trust fund does not lose its identity, though it may change in semblance, and, in whatsoever form it may have assumed, the trust still attaches, whether it remains in the hands of the original trustee, or has gone into other hands, especially if the other has taken with knowledge of the trust relation.

TRANSACTIONS BETWEEN RELATIVES—BURDEN OF PROOF.

5. Where a transaction complained of as creating a constructive trust is between near relatives, it will be viewed with distrust, and, the attendant facts and means of disclosure being peculiarly within the trustees' knowledge, they are called on, when a *prima facie* case is made against them, to show the entire good faith of the transaction, and, failing in this, the *prima facie* case will prevail.

EVIDENCE OF TRUSTEESHIP.

6. The evidence is satisfactory here of a trusteeship, and the trustee should be required to account.

HARMLESS OMISSION OF EVIDENCE.

7. A trusteeship as to definite property having been established, a failure to show the purchase price is not a material omission.

PRACTICE AS TO ACCOUNTINGS.

8. In a suit to establish a constructive trust and for an accounting, it is proper to reserve the matter of the accounting for further hearing and consideration after decreeing the establishment of the trust.

PLEADING BY EXHIBIT—PRACTICE*.

9. In pleading matter included in itemized bills or schedules attached to the pleading there should be an appropriate allegation identifying them and showing that they are a part of the pleading.

PLEADING—SUFFICIENCY OF DENIAL.

10. A denial that defendant paid the sums alleged in his itemized account, or any part thereof, is sufficient to put the items of such account in issue.

From Multnomah : ALFRED F. SEARS, JR., Judge.

This is a suit by Louisa Schwartz and her unmarried sister, Anna Gerhardt, against their father, Martin Gerhardt and his present wife, to declare a constructive trust in certain specific realty, and for an accounting of sundry funds. The plaintiffs, Louisa Schwartz and Anna Ger-

---

*NOTE.—See, also, *McLeod* v. *Lloyd*, 43 Or. 260.          REPORTER.

hardt, are the children of the defendant Martin Gerhardt, and the stepdaughters of Frieda Gerhardt, his wife. They inherited in Germany, from Peter Hahn and Susanna Hahn, their grandparents on their mother's side, $1,725.12, which, it is alleged, came into the possession of the defendant Martin Gerhardt; it being further alleged that he purchased lots 13, 14, 15, and 16, block 1, Lochinvar's Addition, Multnomah County, Oregon, known as the "Piedmont Property," with a portion of such funds, and took the legal title thereto in the name of his wife, with her knowledge of the conditions, and that he converted the remainder to his own use and benefit. A decree is demanded that the real property described be held in trust for plaintiffs, together with an accounting. The plaintiffs having succeeded in the circuit court, and defendants appeal.                                    Affirmed.

For appellants there was a brief and an oral argument by *Mr. Chas. J. Schnabel* and *Mr. Daniel R. Murphy.*

For respondents there was a brief over the name of *Gantenbien & Veazie*, with an oral argument by *Mr. Arthur L. Veazie.*

Mr. Justice Wolverton, after stating the facts in the preceding words, delivered the opinion of the court.

1. The defendants, at the threshold of the controversy, challenge the jurisdiction of the court to require an accounting, or to control in any manner Gerhardt's disposition of the funds, which it is insisted that he holds as the father and natural guardian of plaintiffs, and is accountable only to the court in Germany that gave him the property for administration during the minority of the plaintiffs. Is is undoubtedly a well-established principle of law that a trustee appointed by a foreign court is amenable only to that court, and the fact that his residence is in another jurisdiction will not confer authority there to control

the administration of his trust, or to require accountability for the trust property. The *rationale* of this doctrine is that, the trust relations having been created by judicial decree of another country, the trustee is accountable only to the court creating the trust. He becomes the instrumentality of the court for the administration of the property intrusted to his care and custody, which is to be considered and treated as *in custodia legis;* and, if other jurisdictions were permitted to interfere with and to direct the execution of the trust, it would lead to great conflict of authority and inextricable confusion, which would hinder rather than aid in the rightful administration thereof: 2 Beach, Trusts and Trustees, § 758; *Campbell* v. *Sheldon*, 13 Pick. 8; *Jenkins* v. *Lester*, 131 Mass. 355; *Curtis* v. *Smith*, 6 Blatchf. 537 (Fed. Cas. No. 3,505); *Woodruff* v. *Young*, 43 Mich. 548 (6 N. W. 85); *Vaughan* v. *Northup*, 40 U. S. (15 Pet.) 1; *Peale* v. *Phipps*, 55 U. S. (4 How.) 368.

2. Gerhardt, however, as we view the situation, is not in a position to invoke the rule. The complaint states that on or about the 13th day of January, 1898, a decree was rendered by the Second Civil Department of the Grand Ducal Circuit Court of Mayence, Germany—a court of general jurisdiction, having jurisdiction of said cause and parties—to the effect that the said delendant Martin Gerhardt, as father and natural guardian of the plaintiffs herein, was entitled, under the laws of Germany, during the minority of each of the plaintiffs, to the custody and control of her respective share of the said inheritance, the extent of three-fourths thereof, and that by such decree the said George Hahn was directed to pay over the said three-fourths share of the said inheritance to the said defendant Martin Gerhardt accordingly. This averment does not appear to have been denied by the answer, but it is alleged that a part of the money left by the grandparents, to wit, $1,145.49, was by said court of Germany decreed to be paid over to the

defendant Martin Gerhardt, to be used and expended by him for said children during the time they were under the age of 21 years. The decree referred to is, in part, as follows:

"(1) The wills of Peter Hahn and Susanna, nee Hambach, his wife, of Nierstein, dated November 7, 1889, July 31, 1891, and February 12, 1894, are hereby declared void in so far as they deprive the plaintiff of the administration and of the [use and enjoyment] usufruct of three-fourths of the inheritance of his children.

"(2) It is further found that the plaintiff is entitled to the administration and [use and enjoyment] usufruct of these three-fourths until the children have completed their eighteenth year, and that it is the duty of George Hahn, the defendant, to surrender the plaintiff three-fourths of his children's property, if in his possession; the right to ascertain the amount in detail being reserved."

This is all the evidence to be found in the record tending to show that Gerhardt is a trustee of plaintiffs and their property. The opinion of the court in Germany indicates that the father is not only entitled, under the laws of that country, to the right of administration of the property of his minor children coming to them by inheritance, but that he has a right to the use and enjoyment, or the usufruct, of such property during the time of their minority; the term "usufruct" signifying "the right of enjoying a thing, the property of which is vested in another, and to draw from the same all the profit, utility, and advantage which it may produce, provided it be without altering the substance of the thing": Bouvier, Law Dict. Some criticism as to the correct translation of the term in German standing for "use and enjoyment," or "usufruct" is made, but, by reading the court's decree, together with its opinion in the decision rendered, we are convinced that the father is entitled to the usufruct, that is, the profits or earnings of his children's estate during their minority, and not to the

*corpus* thereof, or any part of it. While Mr. Gantenbein was on the stand as a witness for plaintiffs, it was developed on cross-examination that he had the Codes of the German Empire of 1898, consisting of ten or twelve volumes, in his office, in the City of Portland; that he had never looked into them to ascertain whether a bond was required of a guardian where there was a fund to be distributed, but that he had good reason to believe, from a letter written by a judge of the court in Germany, that such a bond was required, and proffered to offer the letter in evidence if defendants desired, but it was not offered. When asked to produce the Codes, the witness demanded proper notice to do so. Here the case rested, without a production of the Codes, or their being introduced in evidence. We have therefore the simple record, showing the inheritance of the plaintiffs in Germany, which a competent court of that country directed to be surrendered to the defendant Martin Gerhardt, their father, he being entitled thereto under the laws of that country for the purpose of administration, with a right to the profits or earnings arising therefrom during their minority; that is, until they arrive at the age of 18 years. The findings and decree of the court contain no order or direction that he give or furnish any bond or other security for the faithful performance of his trust, nor do they require that he account to the court for the funds thus directed to be delivered or surrendered to him; and the codes and laws of that country regulating the manner or disposition of such property are not before us.

Are we to assume, in the light of this evidence, that the property is *in custodia legis*, or should we take it that the order of the German court introduced made a final disposition thereof, in so far as it was authorized to control and direct its administration, and the trustee's accountability therefor to that tribunal? It was said at the argument that

this court would presume that the laws of Germany in respect to the guardianship of the estates of minors would be the same as our own; therefore, that a bond was required of the guardian, and that he was accountable to the court appointing him. We have enough before us, however, to indicate that the laws there in the respect mentioned are not the same as our own, and hence the presumption cannot hold good. The father there is entitled as of right to both the administration and the profits or earnings of the property during the minority of his children. Not so here. The natural guardian has the preference, if he apply for it, to appointment as guardian of the minor's estate, but has no right whatever to the profits arising therefrom, and is held to a strict accountability to the county court or the ward for the entire property intrusted to him, with all accumulations of profits and earnings. The presumption invoked cannot, therefore, avail the defendants; and, under the evidence, we think the better view is that the decree of the German court finally disposed of the fund when it ordered unconditionally, as it did, that the property be surrendered to the father. When he took possession, it ceased to be *in custodia legis*, and he only became accountable to the plaintiffs for the faithful execution of his trust. The trust was therefore subject to equitable cognizance in this jurisdiction.

3. This brings us to a consideration of the rightful ownership of the realty in controversy. That depends upon whose money was used in its purchase. Plaintiffs say it was theirs, and, having been so employed, that the defendant Frieda Gerhardt holds the property in trust for them. This is denied by defendants, who allege that the purchase was made wholly and entirely with the means of Frieda Gerhardt, and that she is the real owner. The plaintiffs have the burden of proof, and, inasmuch as they are depending upon a constructive trust, they must show by

clear and convincing proofs that their money in the hands of Gerhardt was used by him to purchase the realty, or, in other words, that he has misappropriated or wrongfully employed their means in making the purchase for his wife's use and benefit.

4. The principle is that the fund in trust does not lose its identity, although it may change in semblance, and, whatsoever form it may have assumed, the trust attaches still, whether it remains in the hands of the original trustee, or has gone into other hands, especially if the latter has taken with notice of the trust relations. When, therefore, it is sought to be shown that trust money or property has been misapplied, and to trace or impress the trust upon property in another and different form, the recognized rules of law require that the identity be established by clear and cogent testimony before the courts will say that it is the property of the *cestui que* trust, and that it should be accounted for as such : *Sisemore* v. *Pelton*, 17 Or. 546 (21 Pac. 667); *Barger* v. *Barger*, 30 Or. 268 (47 Pac. 702), and cases cited. See, also, *Myers* v. *Myers*, 47 W. Va. 487 (35 S. E. 868). It is perhaps putting it strongly to say that the proofs should be convincing beyond a reasonable doubt, as though the guilt of a person accused of a crime was in the balance; but they should be such as to satisfy the mind fully from a consideration of all the evidence of the misapplication and of the identity of the trust property sought to be established in its transformed condition.

5. There is another rule, however, equally as well settled, and of peculiar application here, which must be observed in the. course of the investigation, which is that, where the transaction complained of as creating the condition which it is sought to rectify is between near relatives, it will be viewed with distrust, and, the attendant facts and circumstances and the means of disclosure and

explanation being peculiarly within their cognizance and power, they are called upon, when a *prima facie* case is made against them, to show the entire good faith of the transaction. and if they fail in this the *prima facie* case will prevail: *Jolly* v. *Kyle*, 27 Or. 95 (39 Pac. 999); *Mendenhall* v. *Elwert*, 36 Or. 375, 389 (52 Pac. 22, 59 Pac. 805); *Garnier* v. *Wheeler*, 40 Or. 198 (66 Pac. 812); *Goodale* v. *Wheeler*, 41 Or. 190 (68 Pac. 753). With these observations as to the rules of law applicable, we will turn to the evidence.

6. There was an application made for continuance on behalf of the plaintiffs for the purpose of obtaining evidence in Germany, to show, among other things, the amount that Gerhardt had received of plaintiffs' inheritance; but, in order that the trial might proceed, it was admitted, in effect, that testimony would be produced tending to establish the allegations of the plaintiffs upon the subject. This is wholly undisputed, so that it must be taken as proved, as alleged, that Gerhardt received from Germany $1,725.12.

The plaintiff Louisa Schwartz was born in Germany, and Anna Gerhardt in America. When they were yet quite young, the defendant Martin Gerhardt returned with them and his former wife to Germany, where, his wife having soon died, he placed the children in care of his mother, and returned again to America. A few weeks afterward their grandparents on their mother's side, Peter and Susanna Hahn, took them into their custody, and kept them as long as they lived; at their death the children being given in charge of their uncle George Hahn and an aunt. Some six or seven years after coming to America the second time, having married the defendant Frieda in the meantime, Gerhardt again returned to Germany, and was appointed guardian of the persons of the plaintiffs by

44 OR.——28

a decree of the family council, bearing date May 15, 1895. He almost immediately came with the children to America. Peter and Susanna Hahn left an estate to plaintiffs by will, but it was subsequently decreed in a suit instituted by Gerhardt that three-fourths of the property, notwithstanding, descended to plaintiffs by inheritance, and that Gerhardt was entitled, by reason of being their father, to its administration and use and enjoyment, or the issues and profits arising therefrom. The decree is the same as hereinbefore discussed, and bears date January 6, 1898.

In August, 1896, the defendant Martin Gerhardt came with his family from St. Paul, Minnesota, where he was employed as a mechanic in the shops of the Northern Pacific Railroad Company, and settled in Clark County, Washington; purchasing 10 acres of land, at a consideration of $100 per acre. A mortgage was executed upon this place, the amount of which does not appear, presumably to secure the payment of a part, at least, of the purchase price. Gerhardt borrowed $250 to come west on. Mrs. Gerhardt had saved up of her own earnings prior to their marriage $250, but that appears to have been all spent before leaving St. Paul. The family lived scantily on the farm, as it is called, and the parents could not have made more than a bare living while there. Gerhardt sold the place in August, 1898, to his brother-in-law, Moore, for $1,200, and soon thereafter went to Germany; and the family moved to Portland, and stopped at the Hotel Rheinpfalz. He returned from Germany shortly before Christmas, and in a few days the family moved into a house on Sacramento Street, where they lived for two months, when the property in question was purchased, and the family took up their abode there.

Louisa Schwartz testifies that in the winter, after moving on the farm in Clark County, Mrs. Gerhardt received $500, which she inherited, but that they were very poor,

and kept using from it until it was all expended; that the $250 which Gerhardt borrowed before coming west had all been expended; that they had gotten in debt, and the money last received was all paid out before spring; that, when the family moved to Sacramento Street, her father purchased new furniture, at an expense of from $200 to $250, sufficient to furnish the house comcomfortably for people in their station of life; that, soon after her father's return from Germany, he and her stepmother went out every day looking for a home to buy, which resulted in the purchase of the property at Piedmont, and at the same time he bought a cow, a buggy, and some chickens; that when her father left for Germany he told her he was going to San Francisco to seek employment, and that she did not know any different until she overheard her mother and Mr. Moore talking about some money matters, and about him being in Europe trying to get the money; that while he was away her stepmother constantly told her that her father was in San Francisco; that she overheard the stepmother telling her sister that, whenever there was any property purchased again, it would be bought in her name, so that witness and her sister could not touch it; that, when Gerhardt arrived home from Germany, he took witness into a room and asked her if she knew where he had been, and told her he had been to Europe, and that all her relations were dead, and that it was no use for her to write to them, for that reason, and took her to task for having written a letter that he wrongfully accused her of writing, but that he never told her anything about getting the money in Germany; that she had a conversation with her father and stepmother shortly before bringing this suit, in which the witness mentioned the money matter to them — that she would see about the affair as soon as she could—and that Gerhardt made reply that he did not marry her mother for nothing (meaning

her own mother), and that the money belonged to him, and not to plaintiffs; that she told him he bought the Piedmont property with their money, and gave it to their stepmother, which he denied, and that she has never seen her father since to speak to him; that witness' stepmother told her immediately after they moved to Piedmont that her father had paid her back the $750 of hers that he spent, and that she was going to put it in the bank, and would not let him lay another hand on it.

John Fuog testifies that, before going to Germany, Gerhardt said to him, "I got some business. I go to the old country"; and when he came home he said, "I have fixed that all right in the old country"; and after that he bought some property, and said to witness, "John, I have bought a nice property. You come and see me when you get time." This is all the evidence of much importance in the record bearing upon the subject. There is much testimony indicating that the plaintiffs were illy treated by the defendants, and it leaves the impression that the parents were unduly severe with them, and that they discriminated against them in favor of the children of the second marriage, while it might have been, on the other hand, that the plaintiffs were at times undutiful. The only value to be attributed to this is that it sheds light upon the transaction touching the trust as it pertains to plaintiffs' property.

Now, it is manifest from this testimony that when Gerhardt came West with his family from Minnesota he had no ready means, as he was obliged to borrow money to make the journey with. He went in debt for the land he purchased in Clark County, Washington, to what extent is not known, but it must have been considerable. In the winter after their arrival, as related by Louisa, they were indebted to such an extent that, when Mrs. Gerhardt received the $500 from her people, it was soon expended. They lived scantily on the place for two years or more.

In August after the decree was rendered in Germany, giv-
ing the father possession of plaintiffs' inheritance, the
place was sold at a profit of $200 above the purchase price,
there still being a mortgage on it, which was paid off when
the purchaser paid for the land.  Gerhardt went very soon
to Germany, and returned in about two months, or shortly
before Christmas.  It was but a little later that he pur-
chased furniture to the amount of $200 or $250 with which
to furnish the house on Sacramento Street, and he and his
wife began looking for property to buy for a home, result-
ing in about two months in the purchase of the property
in question.  At the same time a purchase was made of a
cow and buggy and some chickens.  Gerhardt attempted
to conceal the fact of his going to Germany from the plain-
tiffs, and his wife led them to believe that he had gone to
San Francisco for the purpose of obtaining work.  When
he returned, he told Louisa where he had been, but he up-
braided and punished her for presuming to write to her
people in Germany, telling her at the same time it was of
no use for her to write any more, as her relatives were all
dead ; but he never disclosed to her at any time the fact
of his obtaining their money in Germany, although she
was then in her sixteenth year, and capable of knowing
and understanding much about such affairs, and fair deal-
ing would suggest that she should have been fully informed
of what he had done relative to their property.  When,
however, he was reproached about the money matters by
Louisa, he replied that the money belonged to him—an
idea that seems to have taken firm hold of him, as his ac-
tions fully indicate.  The stepmother's intentions were dis-
covered by her remark to her sister—in effect, that when
any property was bought again, it should be in her name,
so that the older children would not be able to obtain it.

There is enough here to lead one irresistibly to the con-
clusion that the Piedmont property was purchased with

the money of plaintiffs that the father obtained in Germany. To say the least, there is such a *prima facie* case as to require defendants, who have full knowledge of all transactions respecting the property, to show the true state of affairs, and, not having done so, they must be held to full accountability. Gerhardt could not have had money of his own with which to make these purchases. True, he may have realized something from the farm above the mortgage, but it could not have been a large sum, and the expenses of the family had to be met in the meanwhile, nor could his wife have had any money with which to have made the purchases, for we find that he paid back to her, manifestly out of plaintiffs' funds, the $250 that they used of her earnings in Minnesota, and the $500 that she received from her people after coming to Washington, which was expended while on the farm, making $750, the sum she told Louisa that she had put in the bank, and that her father would never lay hands upon again. These matters are all undenied, and they bear heavily against the father as trustee, who is held to an open, fair, and strict accountability of his trust, and unmistakably implicate the stepmother in his efforts to misappropriate the inheritance of the plaintiffs.

7. There was an omission in failing to show the amount of the purchase price of the realty, but, it being fully apparent that the property was of considerable value, and that it was purchased with the trust funds of the plaintiffs, the defendant Frieda Gerhardt must be held to hold the same as trustee constructively for them, and the decree of the circuit court requiring the conveyance to plaintiffs was properly rendered.

8. The circuit court reserved the matter of the accounting for further hearing and consideration. This was regular, under the practice: *Durkheimer* v. *Heilner*, 24 Or. 270 (33 Pac. 401, 34 Pac. 475).

9. In the itemized account of expenditures alleged to have been made for the benefit of plaintiffs and their trust property, appear two items—one for $678, and the other for $215—which defendants' counsel claim were admitted by the reply by failing to deny them in proper form. The itemized account appears to have been annexed to the answer and marked "Exhibit A," but there is no direct allegation making it a part thereof.

10. Moreover, if it be conceded that it was regularly made a part of such answer, there is a denial in the same connection that defendant Martin Gerhardt paid the sums alleged in their pretended itemized account, Exhibit A, or any part thereof, which is a sufficient denial, under the practice.

The decision of the circuit court will be in all respects affirmed, and it is so. ordered.        AFFIRMED.

---

Decided 1 March, rehearing denied 18 April, 1904.