[Civ. No. 6083. Second Appellate District, Division Two.—May 2, 1929.]

ADOLF SCHUSTER, Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

Loewenthal, Lissner, Roth & Günter for Petitioner.

Newlin & Ashburn, C. W. Johnson and A. W. Ashburn for Respondents.

THOMPSON (IRA F.), J.—This original proceeding is brought to prevent the respondent court from proceeding further in an action entitled *Arthur Schuster et al., Plaintiffs*, v. *Adolf Schuster et al., Defendants*, and particularly to prevent the respondent court from sentencing the petitioner for contempt of court, because of his failure to answer questions at the time fixed for the giving of his deposition. The principal contention of the petitioner is that the respondent court has no jurisdiction over the subject matter of the action, or assuming that it has jurisdiction, it ought not to seek as a matter of comity to exercise the jurisdiction. The following constitute the salient facts: Benjamin Schuster, a resident of Apaché County, Arizona, died December 10, 1911. His will was admitted to probate by the superior court of that county and state on January 2, 1912, and letters testamentary were issued to the executors named in the will, to wit: Adolf Schuster (the petitioner herein), Max Schuster (now deceased) and Josephine Schuster (the widow of deceased and one of the plaintiffs in the action now pending in the respondent court). By the terms of the will a large portion of the estate was given to Adolf Schuster, Josephine Schuster and Max Schuster as trustees, for the purposes of paying certain fixed portions of the income to Josephine Schuster, the widow, and to her for the maintenance of the children of the deceased, and upon the arrival of the children at certain ages, to pay to them certain portions of the principal and finally upon the death of the widow and the attainment of a designated age by each of the children, to distribute to them the remainder of the principal. The children are Arthur Schuster, Marguerite Schuster Ellison, Lloyd Schuster and Edward Schuster. All of these children except Edward Schuster are plaintiffs in the pending action, the plaintiff Lloyd Schuster being an incompetent and appearing by Rolland Ellison, his guardian *ad litem*. Edward Schuster is made a defendant. On February 18, 1913, the trust estate was by an order of the superior court of Apache County, Arizona, distributed to the trustees named. Max Schuster died October 6, 1925, and Adolf Schuster was appointed executor of his last will and testament. On December 31, 1926, Marguerite Schuster Ellison and Arthur Schuster filed their petition in the

Arizona court setting forth the death of Max Schuster, one of the trustees, and alleging that the trustees had not accounted and that the petitioners' interests were adverse to those of the trust estate and that Adolf Schuster had assumed sole control thereof, and asked the court to appoint a new trustee in the place of Max Schuster, deceased, for the purpose of securing a proper accounting. The petitioner here filed an answer thereto denying that his interest was adverse to that of his trust and admitting his failure to render a formal account, although he said the books had always been open to the petitioners and beneficiaries, and averring his willingness to account. It does not appear whether this petition has ever been heard or determined. It does appear, however, that a petition by Adolf Schuster to have ascertained the amount which should be distributed to Marguerite Schuster Ellison, prior to the decease of Josephine Schuster, filed by him on April 18, 1927, is still pending and undetermined in the Arizona court, the proceeding having been continued at the request of Marguerite Schuster Ellison. It also appears that pursuant to the allegation of willingness to account already noticed, the trustees, by Adolph Schuster, did on April 14, 1927, file an account setting forth the assets and liabilities of the trust estate together with the income and disbursements thereof. The plaintiffs in the action pending in the respondent court, Marguerite Schuster Ellison, Lloyd Schuster and Josephine Schuster, interposed and filed written objections to the report and account. A hearing was had from May 2 to May 9, 1927, upon these pleadings in which all of the appearing parties were represented by counsel, and on September 3, 1927, the court made its order and decree settling the account. Some minor items were not allowed, but on the whole the report was confirmed. On October 26, 1927, Marguerite Schuster Ellison gave notice of appeal from the order and decree to the supreme court of the state of Arizona, and it is alleged that the appeal is still pending and undetermined.

Within two months after the appeal was taken and on December 16, 1927, Marguerite Schuster Ellison and the others who filed their objections before the Arizona court and participated in the hearing, commenced the action already mentioned in respondent court, in which they allege, in very

similar vein to the proceeding in Arizona, that Adolf Schuster, the petitioner here, has exercised full control and management of the trust estate; that his interests are adverse to those of the trust estate by reason of his direction to the A. & B. Schuster Company, a corporation, which it is alleged he dominates, to take possession of certain of the trust property for its own use and benefit; that plaintiffs are entitled to an accounting in order to discover these transactions; that plaintiffs are unaware of the exact amounts which should have been paid to the children of the deceased, Benjamin Schuster, upon arriving at certain ages, to wit, twenty-two years and twenty-seven years, and that petitioner has not paid them their full share in accordance with the provisions of the trust; that they are unable to determine the exact amount which should have been paid to the children until an accounting has been had, although it appears that the Arizona court has ratified and confirmed the payment of the amounts due to all the children on arriving at the age of twenty-two and the age of twenty-seven, except Marguerite Schuster Ellison, and has discharged the trustees as to these interests, and that Edward Schuster has acknowledged receipt of his full share payable to him at the age of twenty-seven. They ask that Adolf Schuster, the petitioner here, and the A. & B. Schuster Company, a corporation, which corporation they say is his *alter ego*, be required to account and that petitioner be removed as trustee and someone else be appointed in his stead. There are other facts relating to the procedure by which it was sought to compel the petitioner to give his deposition and to punish him for contempt in refusing to answer the question, but it is unnecessary to state them.

It is patent that the Arizona court has heretofore assumed and exercised and is still exercising jurisdiction of the trust, and a strange and anomalous situation would surely result if the California courts should remove a trustee who is appearing as such in Arizona, especially if the latter court should be of the opinion that he should not be removed. Furthermore, all of the parties to the action pending in the respondent court, with the exception of the defendant corporation, have appeared in and submitted their contentions in the foreign forum. Dissatisfaction on the part of litigants with the orders and decrees of that

court should not prompt the courts of a sister jurisdiction to attempt an interference. There are other cogent reasons which might be enumerated, all of which point in the same direction and indicate to our minds a situation entirely different from that considered in *Smith* v. *Davis*, 90 Cal. 25 [25 Am. St. Rep. 92, 27 Pac. 26], and similar authorities. In the case cited, which is relied upon by respondents, a trust was created, by agreement executed in California, relating to lands situate in Washington territory. The trustee named in the deed of trust was incapable of acting and declined to act. It was held that the courts of this state had jurisdiction to appoint a trustee to execute the trust on the general and well-recognized doctrine that equity acts *in personam*, and not *in rem*. We are confronted with a problem radically different.

Indeed, our legislature, sensing something of the situation which might arise by action of different courts in different counties of our own state, has said, in section 1699 of the Code of Civil Procedure, that "where any trust has been created by or under any will to continue after distribution, the superior court shall not lose jurisdiction of the estate by final distribution, but shall retain jurisdiction thereof for the purpose of the settlement of accounts under the trusts," and has outlined the procedure therefor. It would also be utterly inconsistent with any proper concept of judicial authority to charge a court with the responsibility of settling the accounts of the trusts to say that it did not have the power to remove a recalcitrant or neglectful trustee. In *Dowdall* v. *Superior Court*, 183 Cal. 348 [191 Pac. 685], in drawing the distinction between the jurisdiction possessed by the court which distributed the estate to the trustee and that possessed by any other superior court of the state, our supreme court designated the former as "the primary jurisdiction," and stated that any other superior court to which might be presented a bill in equity relating to the accounts of the trustee should, upon being informed of the jurisdiction of the probate court, postpone the proceeding before it and allow the accounts to be settled in the court of primary jurisdiction. If this be true of the courts of our own jurisdiction, it will readily be appreciated that some considerable degree of importance in this case must be granted to the comity existing between sister states.

We would be compelled to assume that the law of Arizona is the same as our own with respect to the retention of jurisdiction over the estate for the purpose of executing the trust, even though that court had not proceeded to and were not exercising its jurisdiction. Under such circumstances we find the language employed in *Schwartz* v. *Gerhardt,* 44 Or. 425 [75 Pac. 698], to be particularly apt. It reads:

"It is undoubtedly a well-established principle of law that a trustee appointed by a foreign court is amenable only to that court, and the fact that his residence is in another jurisdiction will not confer authority there to control the administration of his trust or to require accountability for the trust property. The rationale of this doctrine is that, the trust relations having been created by judicial decree of another country, the trustee is accountable only to the court creating the trust. He becomes the instrumentality of the court for the administration of the property entrusted to his care and custody, which is to be considered and treated as *in custodia legis;* and if other jurisdictions were permitted to interfere with and to direct the execution of the trust it would lead to great conflict of authority and inextricable confusion, which would hinder rather than aid in the rightful administration thereof. (2 Beach, Trusts and Trustees, sec. 758; *Campbell* v. *Sheldon,* 13 Pick. (Mass.) 8; *Jenkins* v. *Lester,* 131 Mass. 355; *Curtis* v. *Smith,* 6 Blatchf. 537 [Fed. Cas. No. 3505]; *Woodruff* v. *Young,* 43 Mich. 548 [6 N. W. 85]; *Vaughan* v. *Northup,* 15 Pet. 1 [10 L. Ed. 639]; *Peall* v. *Phipps,* 14 How. 368 [14 L. Ed. 459].)" The obvious reply to this quotation, without saying that it is a correct one, would seem to be that here the trustees were not appointed by the court, but by the testator. And such we understand to be the effect of respondents' argument that the status of a testamentary trustee is essentially different from that of an executor. In other words, the respondents recognize the rule announced in *Philbrook* v. *Randall,* 195 Cal. 95 [231 Pac. 739], that "the court having jurisdiction of the administration of the estate and the executrix is the probate court" of a foreign jurisdiction which appointed the executrix, and "such court is therefore the proper forum in which to seek an accounting and settlement of the estate," regardless of the fact that the executrix

may have been guilty of a *devastavit* by her neglect to account, but they attempt to avoid the force of the opinion in the instant case by pointing to the difference in the manner of the appointment. ■ We must concede that a testamentary trustee is vested with some rights and charged with responsibilities prior to the time of distribution (*Estate of O'Connor*, 2 Cal. App. 475 [84 Pac. 317]), but this does not militate against the continuing jurisdiction of the court administering the estate to settle the accounts under the trusts, to supervise the management thereof and to oversee the distribution of the income and the principal when the time arrives, to the beneficiaries. In order that the situation may be made less free from doubt, let us suppose that the Arizona court, acting under a law comparable to section 1702 of our Code of Civil Procedure, which reads in part as follows: "The court in which the administration is pending shall have power at any time before final distribution to appoint some fit and proper person to fill any vacancy in the office of trustee under the will, whether resulting from such *declination, removal, or otherwise;* provided, it shall be required by law, or necessary to carry out the trust created by the will, that such vacancy shall be filled; and every person so appointed shall, before acting as trustee, give a bond such as is required by section one thousand three hundred eighty-eight of this code, of a person to whom letters of administration are directed to issue" (italics ours), had appointed, for any of the causes therein mentioned, the trustee to take the trust estate, would we not be in exactly the situation described in the quotation from *Schwartz* v. *Gerhardt, supra?* What substantial difference does it make that the trustees have received recognition at the hands of the court by the distribution of the estate to them and the confirmation of their reports and accounts, but drew their appointment from the will rather than from the court probating the will? Entirely aside, however, from the statutory enactments under which jurisdiction of the estate is retained, to which we have directed attention, we find some light in the case of *Marsh* v. *Marsh Exrs.*, 73 N. J. Eq. 99 [67 Atl. 706]. In that case a part of the lands were in New Jersey, and one of the heirs brought action there for a partition of the local realty and for an accounting of the rents received therefrom. The court says: "*Prima facie* the

courts of the testator's domicile and of the probate have primary jurisdiction of the trustees and their allowance, and the fact that the trustees' receipts are to some extent from the rents of lands in other states does not, I think, affect the right of the court of domicile and probate to pass on all the items of the trustees' accounts, both as to charge and discharge, according to the laws of this forum. This results from the fact that the trustees derive title through the probate of the will and the receipt of letters testamentary from the New York court, and that court has, therefore, jurisdiction for the settlement of the 'trustees' ' accounts, wherever they may reside (1 Perry, Trusts, sec. 71; *Chase* v. *Chase,* 2 Allen [Mass.], 101). In *Davis* v. *Davis,* 57 N. J. Eq. 252 [41 Atl. 353] (1898), Vice-Chancellor Grey said that active trusts are usually to be enforced in the state of the domicile of the decedent. Complainant having gone to those courts, has submitted himself to their jurisdiction for the purpose of settling the amount due to the *cestui que trusts* up to May 1, 1904, and Minnie Marsh (the plaintiff in New Jersey), the defendant, being a party to the proceeding for an accounting there, the court may certainly include all income and expenditures up to the time of its filing. And in these proceedings all questions arising on the accounting can be settled more satisfactorily than on an accounting here, because the law of the domicile is probably the law to be applied on the settlement of the disputed items." And again the court says: "The jurisdiction in New Jersey, so far as relates to the accounting for rents prior to May 1, 1904, or the filing of the cross-bill, is ancillary, I think, to the primary jurisdiction of the court of domicile and probate, and ordinarily should be exercised only for the purpose of preserving the rights of the parties pending settlement in the place of primary jurisdiction." We also read (5 R. C. L., sec. 110), "when a testamentary trust is created, and the trustee appointed and the parties interested are resident in the same state, there is no doubt that the laws of that state govern all questions in regard thereto." Confirming the text is the case of *First Nat. Bank of Paterson* v. *National Broadway Bank,* 156 N. Y. 459 [42 L. R. A. 139, 51 N. E. 398]. The force of the observation that if the courts of other states were to interfere in instances like the one now before us great conflict of authority and inex-

tricable confusion would hinder the administration of justice becomes apparent from the authorities. ■ We are not here dealing with the different courts of our own state, whose jurisdiction is, subject to the constitution, a matter of legislative control, but the judicial branch of government of a sister state, to whose acts and jurisdiction we owe the highest degree of courtesy and recognition. We are not disposed to say that there may not be instances where the exercise of jurisdiction by our own courts might not be invoked, but we are forced to conclude that the situation here presented does not warrant the court in taking jurisdiction, and that when it assumes to act it is acting improperly and in excess of its rightful authority. *Weintraub* v. *Superior Court*, 91 Cal. App. 763 [267 Pac. 733], quotes with approval from *Brown* v. *Douglass*, 175 Ala. 268 [Ann. Cas. 1914C, 1155, 44 L. R. A. (N. S.) 164, 57 South. 860], as follows: " 'By "excess of jurisdiction," as distinguished from the entire absence of jurisdiction, we understand and mean that the act, though within the general power of the judge, is not authorized, and therefore void, with respect to the particular case, because the conditions which alone authorize the exercise of his general power in that particular case are wanting; and hence the judicial power is not in fact lawfully invoked.' " We cannot imagine language more apt to express the situation presented in the instant cause.

■ The respondents assert, however, that inasmuch as the complaint in the action pending fails to disclose the proceedings in the Arizona courts other than to say that the plaintiffs have been endeavoring to secure an accounting "through proceedings in the superior court of the state of Arizona, in and for the county of Apache," and that it does not allege the fact that the personal defendants reside in that state, or that the testator was a resident there and his will probated there, but that said matters are set up by way of affirmative defense, the writ of prohibition will not lie. In the petition for the writ, however, the petitioner repeats and repleads all of the allegations of the affirmative defense and the respondents have admitted their truth.

■ It is true that in respondents' brief they suggest that they be permitted to amend to meet these allegations, but this suggestion, though it were made in the form of a motion, would be without appeal to our sense of justice, for the

reason that it appears from the abstract of record filed in the cause pending in the supreme court of Arizona, and the abstract of the probate docket, together with copies of the instruments filed in the probate proceedings in Arizona, accompanying the report of the referee appointed by this court to take testimony upon one branch of the case, that the material allegations of the affirmative defense are true. What difference can it make, when the truth of the matter appears, whether it be by allegations of the petitions supplemented by admissions or in the complaint? Here the facts are to be considered as though fully settled, and since a consideration of them discloses the excess of jurisdiction, the writ ought to issue. And this is true because there is no remedy by appeal from the judgment of contempt. Furthermore, it appears that though there were a remedy by appeal, it would not be adequate to protect the petitioner against the loss bound to accrue to him by being forced to bring his records from Arizona to California.

The peremptory writ will issue.

Works, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 31, 1929, and a petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 1, 1929.

All the Justices concurred.