[Civ. No. 13555.   Second Dist., Div. One.   May 28, 1942.]

Estate of WESLEY L. KNOX, Deceased. EDITH KNOX WENDLAND, Appellant, v. CHARLES EDMUND KNOX, as Surviving Testamentary Trustee, etc., Respondent.

Joseph D. Taylor and Charles J. Wendland for Appellant.

Porter & Sutton for Respondent.

DORAN, J.—This is an appeal by the beneficiary of a testamentary trust from an order of the superior court allow-

ing and approving the accounts of the testamentary trustee. The appeal is taken upon a bill of exceptions. Respondent contends that the bill is not complete and that the appeal should be dismissed for failure to file a proper transcript within the time allowed by law. However, no motion to dismiss the appeal appears to have been taken under rule V of the Rules for the Supreme Court and District Courts of Appeal, nor are the objections to the transcript properly taken under rule XV thereof. Respondent also contends that appellant is estopped to take this appeal because of having accepted from the trustee $300 for attorney fees, as allowed in the account settled. Respondent, however, has failed to point out where or in what manner the record supports this claim of estoppel. Respondent's sole reference to the record on this point is insufficient to support his claim.

Wesley L. Knox, the father of appellant, died a resident of the State of Illinois and his will was admitted to probate in that state. The deceased left certain real property in the county of Los Angeles, State of California, and ancillary proceedings were accordingly commenced here and an ancillary executor appointed. By the will, and a codicil thereto, the remainder of decedent's estate was bequeathed in trust to a son of the deceased, Charles Edmund Knox, of Tupper Lake, New York, and to Arthur B. Wells, of Chicago, Illinois, and the survivor of them. At the time of the instant action Charles Edmund Knox, residing in the State of New York, was acting as surviving trustee. The will and codicil provided that the trustees, by sale of the trust property or otherwise, should accumulate in cash or negotiable securities the sum of $15,000 and set the same aside to hold in trust and pay the net income therefrom to appellant as long as she should remain married, until her death, and upon her death to pay the said net income for the care, maintenance and education of any child or children, or descendants surviving appellant, until such surviving children or descendants should arrive at the age of 21 years. In the event appellant should cease to be married the trust was to terminate and the balance remaining in the hands of the trustees was to be conveyed to appellant absolutely. After the accumulation and setting aside of the above mentioned sum, the remainder of the estate was to be divided by the trustees into three shares; and one of such shares was to be added to the said sum of $15,000 and to be administered in like fashion. The other two shares were to be paid over respectively to Charles Edmund Knox

and Arthur H. Knox, as individuals, or to their surviving children or descendants. No accounts were filed by the trustees until the proceedings herein were taken. The Superior Court of Los Angeles County made its order settling the final account of the executor and for distribution of the California property to the trustees. Appellant is a resident of the State of California. In her petition for an accounting herein appellant prayed that the surviving trustee appear and render "a full and true account of all the trust funds held by him as trustee for the benefit of your petitioner and a full account of the property and/or properties distributed to the trustees under and by the decree of distribution made by this court." According to the parties hereto, the proceedings herein were taken under section 1120 et seq., of the Probate Code. At the time of the hearing the surviving trustee was ill at his residence in New York State and the trial proceeded with the understanding that if it became necessary, the beneficiary (appellant) and attorneys for the trustee should have the right to a continuance and the privilege of taking the deposition of the said trustee, in case he sufficiently recovered to give his deposition. The accounts presented by the trustee for settlement in this proceeding included all the property in his hands, whether received through administration in California or in Illinois; and these accounts were allowed and approved.

Appellant contends that the court did not have jurisdiction to settle the accounts of the trustee except as to the California property; that the court erred in allowing the account without requiring the trustee to appear in person as a witness or permitting his deposition to be taken; that the court committed reversible error in settling the accounts with respect to items of rent of certain real property in California; that the judgment should be reversed because of allowance of attorney's fees and fees to the trustee; and that the evidence is insufficient to support the settlement of the accounts.

Respondent concedes that appellant's contention as to jurisdiction would be true except for sections 1120 to 1129 of the Probate Code, the effect of which sections, respondent contends, is to confer upon the probate court a portion of the equity powers vested in the superior court. There is no question but that the probate court is by section 1120, *supra*, given jurisdiction over the accounts of a testamentary trustee of a trust created by a will probated in this state. The ques-

tion here presented is whether such jurisdiction should be exercised over the entire accounts of a testamentary trustee, residing in another state, where the will creating the trust was probated in a third state, a portion of the property involved lies in the State of California and the beneficiary is a resident of this state. It is apparent that, granting the scope of jurisdiction given by section 1120, the question involved remains unanswered until the conflict is resolved between the jurisdiction of the probate court of this state and that of the court where the will was originally probated and the trust therefore created. The question is whether an accounting by a testamentary trustee for the entire estate will lie in the court which had jurisdiction over ancillary administration of a portion of the estate.

An action will not lie in this state to compel an accounting by an executor appointed by a sister state, though ancillary administration is had here. In such a case the California court has jurisdiction only over the ancillary executor. (*Philbrook* v. *Randall,* 195 Cal. 95, 102, 103 [231 Pac. 739].) However, a testamentary trustee occupies a different position. A general administrator is legally a person separate and apart from an ancillary administrator; but a testamentary trustee is both legally and in fact the same person in any state. This distinction is based upon the respective powers of a trustee and an executor. "Though both take their authority from the will, and both are accountable primarily for the execution of their trust to the courts where the will has been probated, yet the trustee has in the execution of his trust different powers and different duties from the executor, and a foreign court can more properly assume jurisdiction in an action brought by or against a trustee than in an action brought by or against an executor, and he can more properly be regarded as an individual rather than an officer of the court." (*Everhart* v. *Provident Life & Trust Co. of Philadelphia, et al.,* 118 Misc. 852 [195 N. Y. Supp. 388].)

The provisions of section 1120 of the Probate Code here pertinent are based upon the provisions of former section 1699, Code of Civil Procedure. *Dowdall* v. *Superior Court,* 183 Cal. 348 [191 Pac. 685], was concerned with a question of jurisdiction over an accounting by a testamentary trustee under the provisions of the latter section. The question there was one of jurisdiction between the courts of two different counties of this state. It was held that the superior court

which by virtue of the decree of distribution has jurisdiction of a trust created by will is the court of primary jurisdiction, and if a bill in equity is filed in any other superior court for the purpose of settling the account of such a trustee, that court, upon being informed of the jurisdiction of the court in probate and that an account is to be or has been filed therein for settlement, should postpone the proceeding in its own case and allow the account to be settled by the court having primary jurisdiction, provided the proceeding in the probate court is made in good faith and prosecuted with diligence. The purport of this decision is at once manifest. It is to be noted that it was not held that the superior court in which the action for accounting was filed did not have jurisdiction, but that the court which had decreed distribution of the estate had *primary* jurisdiction which should be recognized by the former court. *Dowdall* v. *Superior Court, supra,* plainly indicates that had no action been taken in the court of primary jurisdiction it would have been entirely proper for any other superior court in the state to entertain an action for an accounting by the testamentary trustee, assuming such a court to have jurisdiction over the parties. Notwithstanding the fact that the jurisdiction of the courts of this state is a matter of legislative control and that the Dowdall case was concerned with the question of jurisdiction as between courts of different counties within the state, it will be seen from the authorities hereinafter cited that the logical basis for the decision in the Dowdall case is equally applicable to situations involving like questions of jurisdiction as between sister states.

*Schuster* v. *Superior Court,* 98 Cal. App. 619, 620 [277 Pac. 509], was concerned with an application for a writ of prohibition to restrain the Superior Court of Los Angeles County from further proceedings in contempt instituted against the trustee of a testamentary trust, for failure to answer questions on a deposition. The principal contention of the petitioner in that case was that the respondent court had no jurisdiction over the subject matter of the action, or assuming that it had jurisdiction, it ought not to seek to exercise the same as a matter of comity. Petitioner was one of the trustees of a trust created by a will probated in the State of Arizona. An action for an accounting by the trustees had been instituted in that state and was pending on appeal at the time of the institution of a similar action for the same

purpose in Los Angeles County. The deposition there in question was sought in the action for accounting brought in the county of Los Angeles. The appellate court in the Schuster case decided that the California courts should not exercise jurisdiction in the situation there presented and accordingly granted a peremptory writ restraining the lower court from further proceedings in contempt. The court in the Schuster case said (at p. 628) : "We are not here dealing with the different courts of our own state, whose jurisdiction is, subject to the Constitution, a matter of legislative control, but the judicial branch of government of a sister state, to whose acts and jurisdiction we owe the highest degree of courtesy and recognition. *We are not disposed to say that there may not be instances where the exercise of jurisdiction by our own courts might not be invoked,* but we are forced to conclude that the situation here presented does not warrant the court in taking jurisdiction, and that when it assumes to act it is acting improperly and in excess of its rightful authority. *Weintraub* v. *Superior Court,* 91 Cal. App. 763 [267 Pac. 733], quotes with approval from *Broom* v. *Douglass,* 175 Ala. 268 [57 So. 860, Ann. Cas. 1914C, 1155, 44 L.R.A. (N.S.) 164], as follows: ' "By 'excess of jurisdiction,' as distinguished from the entire absence of jurisdiction, we understand and mean that the act, though within the general power of the judge, is not authorized, and therefore void, with respect to the particular case, because the conditions which alone authorize the exercise of his general power in that particular case are wanting; and hence the judicial power is not in fact lawfully invoked." ' We cannot imagine language more apt to express the situation presented in the instant case." (Italics added.) It should be noted that the Schuster case presented a situation where an action for an accounting was already pending in the court of "primary" jurisdiction, the court of the state where the will creating the trust was probated. It should also be noted that the language used by the appellate court leaves the way open for the exercise of jurisdiction by another court, or court of "secondary" jurisdiction, in some instances. The basis for the decision in the Schuster case is clearly that of comity.

Appellant refers to *Schwartz* v. *Gerhardt,* 44 Ore. 425 [75 Pac. 698], as being quoted with approval in the Schuster case, *supra.* A reading of the Schuster case, however, clearly indicates that what is there said must be considered in the

light of the situation there presented, namely, one in which the parties had already submitted the matter of the trustee's accounts to the court of primary jurisdiction. As already here pointed out, the decision in the Schuster case does not preclude, nor purport to preclude invocation of a secondary jurisdiction under circumstances such as are presented by the instant case.

It is true that the court in the Schuster case (at p. 625, et seq.) considers the possibility of a distinction between a testamentary trustee and a trustee appointed by the court, or an executor or administrator; and, though conceding that a testamentary trustee is vested with some rights and charged with responsibilities prior to the time of distribution, the court there appears to have concluded that the manner of appointment makes little difference. The remarks upon the subject there made, however, do not form the basis of the decision there reached. Moreover, it does not appear that such remarks materially conflict with the views hereinabove expressed. It should also be pointed out that the illustration, employed in the Schuster case, of the appointment by a court of a successor to a testamentary trustee is not particularly apt, since such a successor must of necessity draw his powers from the will and occupies the same position as the trustee originally named in the will. What has been already said here regarding the powers of a testamentary trustee applies with equal force to successors thereof, and still leaves room for a distinction between the successors of testamentary trustees and executors or administrators, notwithstanding the dictum in the Schuster case on the subject. Moreover, *Schwartz* v. *Gerhardt, supra,* is distinguishable from the instant case upon the facts. That case was concerned not with a testamentary trust but with one created by judicial decree. In the matter of the exercise of his powers, the trustee of such a trust is more closely akin to an executor or administrator.

In the matter of compelling a testamentary trustee to account for his trust, the doctrine of *forum conveniens,* namely, the place where the trustee may be reached by process, is frequently applied. Such a doctrine appears to have been applied in *Ewing* v. *Ewing,* L.R. 10 App. Cases 453 (House of Lords), a leading English case involving trust funds partly in England and partly in Scotland. It was there held that the Scotch and English courts had concurrent

jurisdiction over the accounting of trust funds. "The courts of the state in which the trustee may be reached by process will, in the absence of factors necessitating the application of the doctrine of *forum nonconveniens,* assume jurisdiction of an action by the beneficiary of a trust under the will of a resident of another state, to recover the trust property or to compel the execution of the trust or for an accounting." (Note, 115 A.L.R. 802, 815, and cases cited.) In the instant case appellant petitioned the superior court for an accounting of the entire trust and the trustee appeared by counsel and submitted his accounts. The jurisdiction of the Illinois courts was not sought. There was no action for an accounting there pending. The trustee having submitted his accounts and appellant being a resident of this state, there appears no ground for the application of the doctrine of *forum nonconveniens;* nor does there appear to be any reason for invoking the principle of comity. Both parties having submitted the matter in controversy to the courts of this state, without having first applied to the Illinois courts, upon any subsequent application for an accounting in the Illinois courts the parties might well find themselves there estopped to deny the jurisdiction of the superior court. There is eminent authority and sound reason for holding the superior court to have jurisdiction over the matter in question.

Aside from the conflicting jurisdiction of two sister states, the instant situation suggests another question, though not one specifically raised by the parties. If an action for accounting is, under the circumstances, properly brought in this state, should it not be addressed to the superior court in the exercise of its general equity jurisdiction rather than as a court sitting in probate? Both parties have denominated the instant action as one for an accounting under section 1120 of the Probate Code. ■■ When the superior court acts under the powers granted it by section 1120 it is engaged in the exercise of its special and limited probate jurisdiction as distinguished from its general law and equity jurisdiction. (See *Estate of McLellan,* 8 Cal. (2d) 49 [63 P. (2d) 1120]; *Estate of Rey,* 31 Cal. App. (2d) 648 [88 P. (2d) 718].) But such a question need not here be answered. ■■ Though the parties state that the instant action is one brought under section 1120 there is nothing in the record to indicate that the court did not entertain the proceeding for an accounting in the exercise of its general powers rather than under its

special limited powers in probate. It must therefore be presumed that the matter was taken over by the court in the exercise of its broader equity powers.

The contentions as to error in allowing the account without requiring testimony of the trustee amount to no more than that the evidence was insufficient to sustain the decree in the absence of such testimony, and should be considered under that point.

The items of rent which appellant contends were erroneously allowed were charged by the trustee as rent of premises in Altadena, California, occupied by appellant and which were a part of the trust estate. Appellant took possession of these premises under a written lease with the trustees for the period from January 8, 1926, to December 7, 1926, providing for a rental of $60 per month. Appellant thereafter remained in possession of the premises. On or about November 1, 1928, and pursuant to the terms of the will, the trustees conveyed an undivided one-third of the premises in question to Arthur Knox and another undivided one-third thereof to Charles Knox as an individual. The remaining undivided one-third of the said premises continued to be held in trust for appellant in accordance with the terms above set forth. Appellant concedes that until November 1, 1928, there is no question as to items of rent, which only appear up until that date in the general trust account, because until November 1, 1928, the trustees had title to the property occupied by appellant and she paid to the trustees rent under the written lease above mentioned. Appellant further concedes that the said lease was undoubtedly renewed by implication until the trustees had conveyed title in the undivided shares to Charles and Arthur. But appellant contends that, thereafter, appellant, Charles and Arthur became tenants in common of the premises in question and hence there could be no further renewal of the lease by implication, notwithstanding the fact that appellant continued to occupy the premises. This contention is based principally upon the rule that a tenant in common in possession is not liable for rent to his cotenants for use and occupation of the premises in the absence of an express agreement therefor.

It must be borne in mind that at the time appellant entered into possession of the premises and agreed to pay rent therefor the entire legal estate to the property was vested in the testamentary trustees. After the legal estate in two-thirds of

the property was conveyed, an undivided one-third each to Charles as an individual and to Arthur, the remaining undivided one-third interest in the premises continued to be held in trust for appellant. Upon conveyance of the respective undivided interests to Charles and Arthur the testamentary trustees and their survivor became tenants in common of the property with Charles, individually, and Arthur. In view of the fact that the testamentary trust was one to provide only for the payment of income to appellant as the beneficiary during her life, and it does not appear that it was ever contemplated that the real property in question should be conveyed to appellant unless she should cease to be married, appellant, as beneficiary of the trust, could not properly be classed as a cotenant of the premises in the absence of the contingent event mentioned. The terms of the trust present a situation within the provisions of section 863 of the Civil Code, which reads as follows: "Except as hereinafter otherwise provided, every express trust in real property, valid as such in its creation, vests the whole estate in the trustees, subject only to the execution of the trust. The beneficiaries take no estate or interest in the property, but may enforce the performance of the trust." (See *Bank of America, etc., Assn.* v. *Sparr Realty Corp.,* 20 Cal. App. (2d) 10 [66 P. (2d) 476].) There is no valid ground upon which to contend that appellant's agreement with the testamentary trustees to pay rent for occupation of the premises in question terminated with the conveyance of the undivided interests to Charles and Arthur. The creation of the common estate did not affect the validity of any such lease of the premises. (*Swartzbaugh* v. *Sampson,* 11 Cal. App. (2d) 451 [54 P. (2d) 73].)

As a tenant in common of the real property here involved the trustee was liable to account to his cotenants for all rents collected from third parties for the premises (*Howard* v. *Throckmorton,* 59 Cal. 79; note, 27 A. L. R. 182, 188); and in the circumstances here presented appellant's occupation of the premises was no more than that of a third party. Appellant, however, contends that her trust estate should not be charged with the rent. It is difficult to perceive the equity in a situation which would permit appellant to occupy the whole of premises to which she had no title, part of which only was being held in trust to provide her income, refuse to pay rent therefor and at the same time receive income from the trust without any deduction for the rent due for occupancy of the property. The estate was properly charged with the rent of the

premises. ■ As to the amount charged for rent, it should be pointed out that the lease was one between the trustees and appellant; and any reduction or change in amount could be made through adjustments agreed upon by the surviving trustee and appellant without the necessity of negotiating or dealing with the other cotenants. (See *Swartzbaugh* v. *Sampson, supra.*) The original lease called for the payment of $60 per month as rent, but it appears from the account that the special trust for appellant was charged at the rate of but $40 per month for the period from November 1, 1928, to January 1, 1937, and but $30 per month from January 1, 1937, to April 1, 1939. Appellant attempts to point out that the trustee's cotenants did not enter into any agreement or lease of the premises, and that, moreover, Arthur, having had nothing to do with such an agreement is not bound by the amount collected by Charles as trustee. What has already been said above answers this argument.

■ Appellant also contends that this action for an accounting is not a proper one in which to try claims for rent. Such a position is untenable. Appellant's attempt to draw an analogy between the present case and one involving the title of a stranger to an estate fails, because, as already indicated, the instant case is not one in which Charles, individually, and Arthur are seeking to collect rents through the testamentary trustee. The trustee himself is seeking to charge appellant with rent for premises leased to her by the trustee. With that lease the cotenants of the trustee have no concern. Their only recourse would be to compel the trustee as their cotenant to account to them for rents received. Upon a partition of the premises the lease to appellant would only apply thereafter to the third of the property held by the trustee. (*Swartzbaugh* v. *Sampson, supra.*) It is thus clear that the cotenants of the trustee are not parties to the lease, nor have they any control over the terms thereof, nor are they concerned with the controversy here presented. ■ Appellant's arguments as to the items charged as rent are all contrary to the rule that one tenant in common may let the entire premises to a third party, and that all a cotenant out of possession is entitled to is to be let into possession with the lessee of his cotenant to enjoy his moiety, or to compel his cotenant to account for the rents received. (*Swartzbaugh* v. *Sampson, supra.*) Moreover, even if appellant's contention that she was a cotenant of the premises were assumed to be correct, the

conclusion above reached would be the same and the trust estate would be properly charged with Charles' and Arthur's share in the rent. (*Vucinich* v. *Gordon,* 51 Cal. App. (2d) 434 [124 P. (2d) 868].)

Under her general contention as to the insufficiency of the evidence to support the judgment settling the trustee's account, appellant attacks the propriety of an investment in the form of a note secured by a purchase money mortgage given to the executor of the estate on the sale of certain real property in Illinois. The will, as amended by the codicil, provided that the trustees should so manage the property in trust, either by selling sufficient of the same or otherwise, that there should accumulate in their hands in cash or negotiable securities the sum of $15,000 as soon after the decedent's death as in their judgment should seem expedient. The trustees set aside for this purpose the sum of $5,000 in cash and the note and mortgage, which was in the sum of $10,000. Appellant contends that such action constituted a breach of the trust because under the law of Illinois a mortgage is not a negotiable security and the trustees in thus setting the same aside to provide the total sum of $15,000 in the special trust fund for appellant had violated the terms of the will. Appellant's attempted distinction is overly refined. It does not appear that the negotiability of the note in question was by Illinois law affected by the security of the mortgage; and respondent points out that the investment has proved sound. Reading the terms of the trust as a whole, it is apparent that the term "negotiable" was employed to assure the trust fund being kept in a comparatively liquid state. It does not appear that the setting aside of a promissory note secured by a mortgage, in order to provide a fund of $15,000, would violate the terms of the will as reasonably construed. It should also be pointed out that appellant's citations of authority on this issue do not support her contention.

Nor is there any merit to similar contentions as to an item representing a dividend on certain bank stock, and as to failure to pay taxes on certain real property. The mere fact that the trustees held an investment in the stock of a bank which thereafter failed does not impugn either their good faith or judgment, and appellant fails to point out how this item indicates mismanagement of the trust. The failure to pay taxes on certain real property is satisfactorily explained in the first report of the general trust, and appellant has

shown nothing to the contrary. As to charges that certain discrepancies appear in the trustee's accounts, regarding items for rent and other miscellaneous items, respondent points out that no such discrepancies exist and appellant fails to make any reply to respondent's explanations in this respect. It appears that respondent's explanation of the items in question is correct.

Appellant contends that the evidence is insufficient to support the settlement of the trustee's accounts because the evidence shows that the trustee failed to administer the trust for the benefit of the beneficiary in accordance with the terms of the will and the trustee mingled individual properties with the trust properties and used trust money to pay individual charges. The will, in creating the trust in question, provided: "As soon after the accumulation and setting aside of said fund of five thousand dollars (amended to $15,000 by the codicil) as to my trustees may seem wise, having in mind the proper conservation and protection of my estate, my said trustees and the survivor of them shall divide all the rest, residue and remainder of my estate into three shares (in making such division my said trustees and the survivor of them shall have the power to turn over securities at their face value and to make division of my real estate in undivided interests) and one of said shares shall be set aside by them and added to said . . . ($15,000) fund, and same shall be administered by them upon the same trust herein provided for said . . . ($15,000) fund and one of said shares shall be paid over and conveyed to my son, Charles Edmund Knox and the remaining share shall be paid over and conveyed to my son, Arthur H. Knox. . . ." The trustees by the will were given full power and authority to direct, manage and control all the property held in trust, as they should see fit and deem expedient. Pursuant to the terms of the will, above set forth, the real property held in the general trust was distributed in undivided shares, one such share remaining in trust for the benefit of appellant. In her brief appellant states: "A superficial examination of the general trust account shows that after November 1, 1928, when only one-third of the real property was held in any trust, the trust which is here accounted for was administered as though all of the real property was a part of the trust and as though the trust was for the benefit, even after the division of the real property, not only of Edith, but also of Charles and Arthur." An examination of the trust account does not reveal this to be true. In accounting for the

property held in undivided shares the trustee reported the total of principal, income, expenses and disbursements, as applied to the entire property, and charged and credited the trustee with one-third of such items. As respondent points out, the result of this manner of accounting for the funds is that each of the parties interested in the common properties has been credited with one-third of the income and each has borne one-third of any deficit or expense. This method of accounting for the property held in common shares does not amount to commingling of trust funds or to administering the property as though all of it were held in trust. Appellant objects to the fact that it appears that Arthur collected all the proceeds from certain of the common realty in Chicago, and thus received all the income therefrom without paying any of the expense. This contention is unfounded. It appears from the account that the trustee has entered a claim thereon against Arthur for the trustee's share of the rents so collected and has charged the trustee accordingly. As already pointed out, the account reveals that each party to the common property has been charged with his respective share of the expenses. Moreover, in connection with the rent collections made by Arthur, it appears from the account that the amount in question is the net amount of rents so collected, over and above certain deductions for repairs and expenses. It does not appear that Arthur has escaped his share of the burden of expense.

It should also be pointed out that, as one of the cotenants, Arthur was entitled to collect the rents for the common property, being liable to account to his cotenants therefor. No impropriety is shown by the fact that Arthur was permitted to collect the proceeds from certain of the common property.

Appellant's contentions as to the failure to divide a certain cash balance immediately upon its accumulation is not well founded. It should be remembered that the trustees were given full power of discretion in the management of the trust; and the failure to so divide such a cash balance does not appear to have been an abuse of the discretion reposed in the trustees.

As already mentioned, appellant's contention as to error in the refusal of the court to permit the taking of the trustee's deposition is based upon a claim of insufficiency of the evidence to support the decree otherwise. The trustee appears to have made a full and complete accounting accompanied with a thorough report, and the record supports the findings

of the court and the decree settling the trustee's accounts. At the time of the hearing of this matter the trustee was seriously ill at his home in New York. The motion to take the deposition of the trustee was made after all the evidence had been presented. Appellant has given no specific reason why, in view of the evidence presented, the deposition of the trustee was necessary to a decision by the trial court. It does not appear that the decision of the court would have been any different had such a deposition been allowed. The allowance of such a deposition rested with the discretion of the trial court, and no abuse appears.

■ Appellant objects to an allowance of attorneys' fees in the sum of $1,500 and to the allowance of fees to the trustee. As to the services of the attorneys, appellant argues that two-thirds of the items appearing in the general trust account involved individually owned property of Arthur and Charles, and that therefore the attorneys' fees allowed against the estate should be reduced by two-thirds. Appellant, however, concedes that there is no question as to reasonableness of the allowance if all of the services could properly be charged against this trust. From what has already been said as to the method of accounting for the common property, it is clear that all of the services of the attorneys are properly chargeable against the trust. Appellant's claim that the services of the attorneys were caused by dereliction of the trustee, in failing to keep his accounts, is unwarranted in the light of the findings of the court, supported by the evidence. For the same reason, appellant's contentions as to the allowance of fees to the trustee are without merit. While the instant proceeding appears to be the first formal accounting by the surviving trustee before a court, the record indicates that on previous occasions the trustee had rendered informal accountings to appellant and had conferred with her or her representatives regarding the trust and its administration.

For the foregoing reasons the order allowing and approving the accounts of the testamentary trustee is affirmed.

York, P. J., and White, J., concurred.

A petition for a hearing by the Supreme Court was denied July 23, 1942.