51 P.(2d) 601

JAMES et al. v. ANDERSON et al.

No. 4069.

Supreme Court of New Mexico.

Nov. 6, 1935.

H. B. Hamilton and Whitaker & Peti-
colas, all of El Paso, Tex., for appellants.

L. P. McHalffey, of Lordsburg, for ap-
pellees.

HUDSPETH, Justice.

The appellants filed suit for an accounting and injunction and for possession of the Barney group of lode mining claims in the Eureka mining district, Hidalgo county, on the 18th day of January, 1934, basing their claim upon the following document:

"Hachita, N. M. Jan. 28, '32

"We the owners of the Barney Group of gold claims, i. e. (M. T. Anderson and John Mitchell) agree to give J. A. James and H. W. Flynt an option to purchase the said group of claims for ten thousand dollars and to work the said property for five years under the following conditions: To start work inside of ninety days and to pay a royalty of ten per-cent of the output on all ores of ten dollars per ton or under, and fifteen percent on all ores going fifteen dollars or more per ton. A minimum of twenty shifts work to be done every month.

"All royalties paid to apply on the purchase price of ten thousand dollars any time in the five years mentioned.

"It is understood a mill be placed on the property."

Appellee M. T. Anderson wrote the document and signed it. He also signed the name of John Mitchell. Opposite Mitchell's name appears, "With power of attorney, A. Bonner."

The court found:

"Second. That several months prior to January 28th, 1932 the defendant John Mitchell executed and delivered to A. Bonner a Power of Attorney to sell his interest in said mining claims, which said Power of Attorney was lost and destroyed on or about the month of October, 1931, which said Power of Attorney was never recorded and the contents of which is not known.

"Third. That the alleged contract a copy of which was attached to the Complaint filed herein and marked 'Plaintiff's Exhibit A' was signed by M. T. Anderson, J. A. James and H. W. Flynt, and John Mitchell's name was signed thereto by M. T. Anderson; that neither the said M. T. Anderson or A. Bonner had authority to sign said alleged contract in behalf of John Mitchell, which said contract was not acknowledged by either of the conveying parties M. T. Anderson or John Mitchell. * * *

"Tenth. That the plaintiffs entered upon said mining claims on or about the 25th day of April A. D., 1932 for the purpose of prospecting said claims under said contract and option agreement, but without the knowledge and consent of the defendant John Mitchell, the then owner of an undivided one-half interest in said Group of mining claims.

"Eleventh. That the plaintiffs, J. A. James and H. W. Flynt on the 1st day of May A. D., 1932 when informed by the defendant John Mitchell that he had not signed said contract and would not ratify the same, and failed and refused to execute the proposed lease presented on

said date, peacefully vacated and abandoned said property at the request of the defendant John Mitchell and in the presence of the defendant John G. Russell."

The court concluded that the contract was invalid, not binding on the appellee John Mitchell or appellee John Russell, and that John Russell was an innocent purchaser and "that said contract and option agreement by reason of the laches and delay by plaintiffs in performing the covenants therein or asserting any right thereunder had become invalid and unenforceable as to all the defendants." And, "that plaintiffs abandoned said property and all of their right, title and claim under said contract and option agreement on the 1st day of May A. D. 1932."

■ Appellants submitted to the court proposed findings and duly objected and excepted to the findings and conclusions made, and these alleged errors are the points relied upon for reversal. The rule that findings of fact made by the trial court supported by substantial evidence are conclusive upon us has long prevailed; and every reasonable intendment and presumption will be resolved against the appellants and in favor of the proceedings below. Zack Metal Co. v. Torpedo Copper Co. (Daily v. Fitzgerald), 17 N. M. 137, 125 P. 625, Ann. Cas. 1914D, 1183; Guaranty Bank. Corp. v. W. I. & B. Co., 28 N. M. 19, 205 P. 728.

The first question to be determined is whether or not the appellee Mitchell was bound by the contract of January 28, 1932.

■ Appellants' witness Bonner, when asked if the power of attorney sent to him by appellee Mitchell gave him power to lease the mining claims, testified: "No, sir, I don't think it did." A naked power of sale does not imply a power to lease. 2 C. J. 646; King v. Myers, 60 Pa. Super. 345.

Appellee Mitchell testified that the power of attorney contained a limitation to the effect that Bonner was authorized to sign a deed or option affecting the mining property only when $1,000 of the purchase price was paid in hand; and appellant James admitted that during the conversation on May 1, Mitchell said he expected a cash consideration.

■ We are constrained to hold that under this evidence the finding of the court that Bonner was not authorized to execute the contract of January 28, 1932, is supported by substantial evidence.

■ Appellants' able counsel argue that Anderson bound Mitchell by signing his name to the contract, (1) by reason of the fact that he was a general partner, (2) that he and Mitchell were mining partners, and (3) by reason of his cotenancy. There is very little evidence of the existence of a mining partnership. A mining partner is without authority to convey more than his interest in the partnership property. Meagher v. Reed, 14 Colo. 335, 24 P. 681, 9 L. R. A. 455; 2

Snyder on Mines, p. 1145. There is no evidence of a general partnership unless the fact that the cotenants had agreed upon a price at which they would sell and both were looking for a buyer is so considered. This is insufficient to create a partnership. Mere community of interest in property does not create a partnership. Irick v. Elkins, 38 N. M. 113, 28 P.(2d) 657.

Appellees Anderson and Mitchell located the mining claims involved in this case under the United States mining laws. "A tenancy in common of a mining claim upon the public domain arises when two or more persons participate in its location." 3 Lindley on Mines (3d Ed.) § 788.

■ Appellants' contention that a tenant in common may bind his cotenant by a lease demising their joint interest is answered by the recent case of Williams v. Sinclair Refining Co., 39 N. M. 388, 47 P.(2d) 910, where we held a cotenant had no such power. The cases distinguishing mining partnerships from tenancies in common and agency agreements are collected in a note to Sturm v. Ulrich (C. C. A.) 10 F.(2d) 9.

Under the findings of the court we must hold that Mitchell was not bound by the contract of January 28, and he had a right to insist that appellants cease operations under claim of right as his lessees.

This brings us to the more difficult question as to the rights of appellants under the contract with reference to the undivided one-half interest of appellee Anderson in the group of mining claims, and the right to an accounting for the ore shipped by appellee Russell. Appellants maintain that the court erred in finding that they peacefully vacated and abandoned the mining property on May 1, 1932. They alleged that they were ousted by the appellee Mitchell in the presence of appellee Russell. The testimony as to what was said on May 1 by Mitchell and appellant James, before James left the property involved in this suit, is conflicting, although it is admitted that there was no threat of violence or the use of force by Mitchell and that appellee Anderson did not participate in the conversation. However, Anderson had previously refused to sign the lease and option prepared by appellants' attorneys because of a paragraph therein, the meaning of which he did not understand, and he further testified that the manner and speech of the appellant James, at the time he presented the paper for his signature, caused him to become suspicious. This typewritten document consisting of three pages was returned by appellant James to his attorney and they were unable to produce it at the trial. After disposing of a box of dynamite and other supplies, appellants left the mining property on the 1st of May, 1932; and on the 4th of May, 1932, appellant James acknowledged the contract of January 28, 1932, before one of his attorneys, a notary public, in El Paso, Tex., and forwarded it to the

county clerk of Hidalgo county, N. M., for record. The contract was received by the county clerk on the 6th day of May. It is not claimed that his acknowledgment of this document entitled appellants to demand that it be recorded, but it is argued that the acts of appellants show an intention not to abandon their right under the contract.

Appellants also sent by registered mail the following:

"May 5, 1932.

"Messrs. Anderson and Mitchell, The Barney Group of Mines, Hachita, New Mexico.

"Gentlemen: This is to inform you that we claim all of our rights to purchase lease of said mine, and that we are able to go back to work on said mine when we are legally permitted to do so by you.

"Hoping to obtain your permission in the near future, we are

"Yours very truly,

"J. A. James

"Subscribed and sworn to before me this 5th day of May, 1932.

"Hermoine Stevens, Notary Public,

"El Paso County, Texas."

The court found that this notice was received by appellee Anderson, but not communicated to the other appellees, who had returned to their homes in Globe, Ariz. Mitchell sold and conveyed his undivided one-half interest in the group of mining claims on the 7th. day of May, 1932, to appellee Russell. It is admitted that appellants made no other or further demands and took no further step toward the assertion or the enforcement of their rights until the filing of this suit, nearly twenty months later. Six months elapsed before work on the mining claims was commenced by appellees Anderson and Russell, who sank an old shaft some ten feet deeper to a depth of forty feet and drove a drift at the bottom of the shaft sixty feet. Whether or not valuable ore was exposed by this work is not shown. In August, 1933, appellee Anderson executed a lease and option to purchase his interest and delivered sole possession of the property to appellee Russell, who in January, 1934, shipped two cars of ore from the property to the El Paso Smelting Works located in El Paso, Tex. While it is not shown that appellee Russell developed valuable ore, he testified that he continued operations until notified by the manager of the smelter in February, 1934, that appellants had made claim of ownership of the two cars of ore, and for that reason the proceeds of the ore would be held pending the settlement of the question of ownership. There were old workings on the property and there is evidence to the effect that the first car of ore shipped by appellee Russell was from the old dumps—"the accumulation of fifty years." Appellee Anderson testified that the ore of the property would not stand the cost of shipping and smelting under the old price of gold, $20.67 per ounce, but that after the increase in the price of gold to $35 per

ounce, the ore would yield a net profit after paying all charges including smelting. He also testified in effect that appellants' agreement to put a mill on the property—an essential for successful operation at the time the contract was signed —was part of the consideration of the contract. He complained that appellants had not complied with their agreement to commence the development of water for the mill during the ninety-day period following the signing of the contract.

Under the holding that Mitchell was not bound by the contract of January 28, 1932, he was within his rights in insisting that he be allowed to enter the property and share possession as a tenant in common with Anderson or Anderson's lessees. On the contrary, he had no right to oust the lessees of Anderson. Williams v. Sinclair, supra. A careful review of the record fails to disclose a single word of testimony tending to support the theory now advanced that appellants were asserting their rights to share the possession with appellee Mitchell as tenants in common—lessees of appellee Anderson. Nor did Mitchell assert that Anderson was not bound by the contract which he had signed. Mitchell's conversation, according to all the testimony, was confined to his individual affairs—a refusal to sign the contract prepared by appellants' attorneys, a refusal to ratify the contract of January 28, 1932, and a denial of its validity in so far as his interest in the mining property was concerned. There is a conflict in the testimony

as to the reasons which he assigned for the invalidity of the contract, but no one testified that he asserted or even intimated that Anderson was not bound. His purpose evidently was to clear his title to an undivided one-half interest of a cloud and to be rid of those claiming to be lessees thereof. After a careful consideration of this conflicting testimony, we are unable to say that the trial court's finding that appellants peacefully vacated and abandoned the property is not supported by substantial evidence. There is evidence by the appellants in the nature of excuses, but not sufficient to overcome the legal presumption that the findings of the court are correct. Tucker v. Canfield (C. C. A.) 276 F. 385; Pursel v. Reading Iron Co. (C. C. A.) 232 F. 801. Under this finding that the appellants were not ousted, they had no interest in the ore shipped by appellee Russell unless their letter or notice of May 5 can be construed as an offer to operate with the cotenant, since an occupying tenant is not liable in the absence of the exclusion of his cotenant to account for the proceeds of his operations. Williams v. Sinclair, supra; 3 Lindley on Mines (3d Ed.) § 789A, where it is said:

"We have seen that the tenant in common is entitled to the use of the whole and every part of the common property, subject to the contemporaneous right of his cotenants to the same use and enjoyment. This does not mean that one tenant in common is entitled to the issues and profits of the estate, created or brought forth

by the industry of his cotenant. These are merely the results of such cotenant's exercise of his own rights. So long as he exercises those rights without infringing the correlative rights of his associates in interest, he is entitled to the resulting product, even though it may, by the inactivity of such associates, be the fruit of the entire estate.

"If there be hardship in such a case, it results rather from the nature of the tenancy than from the application of any harsh principle in the administration of the law. The adoption of an opposite rule would enable a tenant in common to lie by and await, without risk, the issue of his cotenant's thrift and enterprise, and in the event of loss say, 'It is your affair, not mine,' and in the event of profit claim his share therein."

Since the court found that appellants left the property voluntarily on May 1, Russell, who witnessed their departure, bought the Mitchell undivided one-half interest in the property free of terre-tenant. But appellants strenuously urge that he is bound by the notice of May 5 in that he did not permit appellants to operate with him, and, by his refusal, ousted them. In order to establish an ouster by one cotenant of his fellow, upon proof of a demand for possession of mining property and a refusal to comply, a demand for the precise moiety or share which the cotenant claims is indispensable. The refusal of the demand for the whole, made by a lessee of an owner of an undivided one-half of the property, would not

amount to an ouster. Williams v. Sinclair, supra. It follows that appellants had no interest in the ore shipped to the El Paso Smelting Works and were not entitled to an accounting by the occupying tenant.

Another point relied upon for reversal and argued strenuously in this court, although it may be doubted if the question was properly raised in the court below, is that appellants are entitled to have the contract of January 28, 1932, specifically performed by appellee Anderson, notwithstanding the holding that they have no interest in the Mitchell half of the property or in the ore shipped by Russell. Appellants argue that the doctrine of laches as laid down in Patterson v. Hewitt, 11 N. M. 1, 66 P. 552, 55 L. R. A. 658, is not applicable because the increase in the value of the property was due to the increase in the price of gold and not to the work and expenditures of appellees on the property. 21 C. J. 233. On the other hand, appellees maintain that the evidence supports the findings of the court that appellants abandoned the property and all rights under the contract on May 1, and that their acts in attempting to record the contract and the sending of the notice on May 5 were merely efforts to profit by speculative delay, without performing the work or making the expenditures required of them under the contract. The rule is stated in 21 C. J. 225 as follows: "A person may not withhold his claim, awaiting the outcome of an enterprise, and then, after

a decided turn has taken place in his favor, assert his interest, especially where he has thus avoided the risks of the enterprise. Accordingly, if the property involved is of a speculative or fluctuating character, more than ordinary promptness is required of a claimant; he must press his claim at the earliest possible time. This rule is applied with great strictness in the case of mining property, since it is of a specially precarious nature, and is exposed to the utmost fluctuations in value."

Good faith and diligence are required of a claimant of rights such as those asserted by appellants. Freeport Sulphur Co. v. American Sulphur Royalty Co., 117 Tex. 439, 6 S.W.(2d) 1039, 60 A. L. R. 890, and annotation. The question of the cancellation of lease for forfeiture is also treated in this annotation, and it is stated by the annotator (60 A. L. R. 922): "To the rule that equity will not enforce a forfeiture, there is the exception that where the forfeiture works equity, and protects the rights of the parties, equity will enforce it. This rule applies to forfeiture of a mining lease for failure of the lessee to mine according to the terms of the lease. Cherokee Construction Co. v. Bishop, 86 Ark. 489, 126 Am. St. Rep. 1098, 112 S. W. 189."

The appellee Anderson testified that appellants agreed to build a mill and to start the work of developing water for the mill immediately after the contract was signed. It was admitted by appellants that they were obligated to build a mill if the ore warranted it. They took no steps, after Mitchell refused to give a lease on his undivided half, to clarify the terms of their lease which failed to provide the rate of royalty on ores carrying values between $10 and $15 [Colcott v. Sutherland, 36 N. M. 370, 16 P.(2d) 399], and they failed to offer to build a mill upon the property. There was no offer to do equity. Pugh v. Phelps, 37 N. M. 126, 19 P.(2d) 315. It is apparent that the failure to obtain an option and lease on the Mitchell undivided half interest in the property was a heavy handicap upon appellants' operations. They were compelled to make expenditures in order to comply with the terms of the lease and option contract, and at the same time they would have been without remedy against their cotenant in so far as being able to compel him to contribute toward the expense of their mining operations or the cost of the building of the mill. Lindley on Mines, supra. It appears that appellants expected to obtain funds from others with which to make the improvements on the mining property. In fact they alleged that, in order to work the properties and mine the same and finance their operation, undisputed possession of the property was indispensable. An undivided one-half interest only is very different from the whole as an asset upon which to obtain money with which to improve a property. And it was not even asserted that appellants would have been able to obtain funds necessary to build the mill, if they

had so desired, on an undivided half interest alone. As a general rule, specific performance will not be decreed in favor of a plaintiff financially unable to carry out his part of the contract. Taylor v. Santa Fe N. W. Ry. Co., 38 N. M. 457, 34 P.(2d) 1102. All these matters are persuasive that the court's findings and conclusions are correct, and that it would now be inequitable to allow the claim to be asserted. Algodones Land & Town Co. v. Frank, 21 N. M. 82, 153 P. 1032; Locke v. Murdoch, 20 N. M. 522, 151 P. 298, L. R. A. 1917B, 267; Raton Waterworks Co. v. City of Raton, 22 N. M. 464, 164 P. 826.

Without more, we hold that the relief was properly refused and the decree should be affirmed, and it is so ordered.

SADLER, C. J., and BICKLEY and ZINN, JJ., concur.

BRICE, J., did not participate.