**WASHINGTON INSURANCE AGENCY, INC., Appellant,**

v.

**Jack L. FRIEDLANDER, Executor, Estate of Gustave Ring, and Executor, Estate of Marion Ring, and Carlyn Ring, Appellees.**

Nos. 84–670, 84–827.

District of Columbia Court of Appeals.

Argued Dec. 11, 1984.

Decided Jan. 31, 1985.

Maurice A. Guervitz, Washington, D.C., for appellant.

Robin D. Kardon, Washington, D.C., with whom Morris Kletzkin, Washington, D.C., was on brief, for appellees.

Before MACK, FERREN and ROGERS, Associate Judges.

FERREN, Associate Judge:

Appellant Washington Insurance Agency, Inc. (WIA), a commercial tenant under a five-year lease, vacated the premises after three and a half years. One of the owners brought suit. The trial court granted his motion for summary judgment and awarded damages against WIA for unpaid rent, interest, and costs. On appeal, WIA argues that the lease was not enforceable because only one of the three owners had signed the lease; accordingly, WIA was entitled to abandon the premises without liability for rent during the period before the owners found a new tenant. We disagree and thus affirm.

I.

In April 1979, Gustave Ring entered into a five-year lease with WIA for suit # 206 at 1200 18th Street, N.W., known as the Ring Building. Gustave Ring, Marion Ring, and Carlyn Ring owned the property as tenants in common. Gustave Ring signed the lease as "Gustave Ring, AGENT." Marion and Carlyn Ring did not sign.[1]

On August 16, 1982, WIA informed Gustave Ring that it intended to move and requested relief from the lease obligation. Gustave Ring agreed, provided that WIA locate a suitable subtenant to complete the lease term. In October 1982, WIA quit the premises, without having found a subtenant, and stopped paying rent.

In March 1983, Gustave Ring filed suit against WIA for "the rent due and owing." Shortly thereafter, Gustave Ring died. The court granted a motion for substitution of parties: Jack L. Friedlander, as executor of the estates of Gustave Ring and Marion L. Ring, and Carlyn Ring. After completion of discovery, plaintiffs filed a motion for summary judgment, which the court granted on April 18, 1984. Two weeks later, on May 3, 1984, the court entered a judgment against WIA for $13,768.95 plus interest and costs.[2] WIA now appeals both orders.

II.

WIA contends that the trial court erred as a matter of law in granting summary judgment because the parties had not entered into a valid five-year lease. More specifically, WIA cites two statutes that appear to preclude anyone but the lessor from conveying an interest in real property for a period that exceeds one year. D.C. Code § 45–306 (1981) provides:

No estate ... for a longer term than 1 year, in any real property ... shall be created ... except by deed signed and sealed by the ... lessor....

D.C.Code § 45–601 (1981) provides:

No deeds of conveyance of either real or personal estate by individuals shall be executed or acknowledged by attorney.

WIA next points out that two of the supposed lessors, Marion and Carlyn Ring, did not personally sign the lease; "Gustave Ring, AGENT" purportedly signed for all three common owners. *See supra* note 1. Then, citing *Paul v. Holloway*, 124 A.2d 587 (D.C.1956), WIA stresses that § 45–601 proscribes the execution of a lease by an "agent" as well as by an "attorney." Accordingly, argues WIA, the lease was invalid "as to a five year term" because the signatures of all three owners were re-

---

1. The lease identified Gustave Ring, Marion Ring, and Carlyn Ring as "lessors," and Gustave Ring as the "agent" of the "lessors."

2. This figure represents rent computed under the lease for the period October 1, 1982 through June 30, 1983—the period between the time WIA stopped paying rent and the date Gustave Ring installed a new tenant.

quired; Marion and Carlyn Ring did not sign, and Gustave Ring could not lawfully sign on behalf of all three. It follows, says WIA, that the parties had "created merely a month-to-month tenancy after the first year of said agreement," requiring only one month's notice to vacate.

We disagree with WIA's analysis because it proceeds from a false premise: that all tenants in common must execute a lease to convey an interest in the entire premises. As we elaborate below, one such owner may do so.

■ Gustave Ring signed the lease, with respect to any interest he could convey, as an owner-lessor, not merely as an agent.[3] It is true that Gustave Ring could not bind the interests of his co-owners, even though they authorized him to sign as their agent. D.C.Code § 45–601; *Paul,* 124 A.2d at 589; *Velati v. Dante,* 39 App.D.C. 372, 375–76 (1912), *cert. denied,* 227 U.S. 679, 33 S.Ct. 462, 57 L.Ed. 700 (1913). But it does not necessarily follow that the lease was invalid as to WIA.[4]

■ It is well established that a lease signed by one cotenant-lessor is not invalid, as to the lessee, for failure of the other cotenants to sign as colessors. *Thalis v. Wurdeman,* 73 App.D.C. 322, 323, 121 F.2d 70, 71 (1941); *Colorado Fuel & Iron Co. v. Pryor,* 25 Colo. 540, 543–548, 57 P. 51, 52–53 (1898); *Bain v. Roma Financial, Inc.,* 362 So.2d 1027, 1028 (Fla.Dist.Ct.App. 1978); *Simkin v. New York Central Railroad Co.,* 138 Ind.App. 668, 671–672, 214 N.E.2d 661, 663 (1966). " 'Subject to the rights of his cotenants, a cotenant of real property may use and enjoy the common estate in the same manner as though he were the sole proprietor.'" *Simkin,* 138 Ind.App. at 672, 214 N.E.2d at 663 (citation omitted). Thus, a cotenant, who possesses an undivided interest, may rent out the entire property (subject to the interests of the nonleasing cotenants), and the lessee who takes possession will be fully liable on the covenant for rent. *Harms v. McCormick,* 132 Ill. 104, 22 N.E. 511 (1889); 86 C.J.S. *Tenancy in Common* § 113, at 522 (1954). *Accord In re Knox' Estate,* 52 Cal.App.2d 338, 126 P.2d 108, 115 (1942).[5]

**3.** In its answer to the complaint, WIA conceded Gustave Ring's ownership interest in the premises.

**4.** *Paul* and *Velati* are distinguishable from this case. In *Paul,* this court merely held that a rental agent may not, acting solely as an authorized agent, effectively convey real estate, because an agent "ha[s] no interest to convey." 124 A.2d at 589. In *Velati,* a life tenant leased certain premises without obtaining the signatures of her cotenants, who held the fee interest. She subsequently died during the term of the lease. Thereafter, her successor in interest sought to repossess the premises; the lessee attempted to enforce a covenant to renew. The court ousted the lessee. Because the lessor could only convey her interest, *i.e.,* a life tenancy, "the rights, if any, acquired through the lease expired with her." The lease "was void *ab initio*" as to her cotenants and successors in interest, who had not joined in the lease. 39 App. D.C. at 376. Thus, they were entitled to immediate possession from the lessee, who had become a tenant at sufferance. *Velati* does not stand for the proposition that the life tenant herself could not have enforced the lease against the lessee had the lessee committed a breach of the lease during her lifetime.

**5.** The persuasive reasoning of the Illinois Supreme Court in *Harms* is particularly applicable here. In *Harms,* a cotenant-lessor purported to lease premises as both owner and agent for the other owners. The lessor failed to execute the lease in a manner that would effectively bind his cotenants. In affirming judgment for the lessor in a later action to collect unpaid rent, the court observed:

In all of the cases cited by [the lessees] a failure of the agent or attorney to execute the donated power in the mode required by law appears, but in none of them did such agent or attorney, in addition to the power, have an interest in the property.... The cases are based upon the ground no interest is conveyed, and consequently the instrument is void; but manifestly that ground does not exist in the suit before us. When there are tenants in common of land, and one of them executes a lease ... in his own name for the whole of the land, and gives the lessees possession, and such lessees have the quiet possession and enjoyment of the premises during the whole term limited by the lease, we are not prepared to hold such lease is void, and that the lessor cannot enforce any of the covenants ... against the lessees.

132 Ill. at 108–109, 22 N.E. at 512.

In sum, as a cotenant-owner of the Ring Building, Gustave Ring could effectively convey his undivided interest in suite #206 to WIA for a term of years. *See* D.C.Code § 45–306 (1981). WIA accordingly, had the right to occupy, and was obliged to pay rent for, the entire premises—subject to Marion and Carlyn Ring's interests as nonleasing cotenants. *See Thalis*, 73 App.D.C. at 323, 121 F.2d at 71.[6]

■ WIA, in effect, has tried to invoke the rights of nonleasing cotenants—rights which a leasing cotenant cannot bind—to avoid its own obligations as a lessee. It is true that nonleasing cotenants may have a remedy against a leasing cotenant who receives more than a fair share of the rental income.[7] Moreover, nonleasing cotenants may have possessory rights in common with the lessee.[8] But the lessee itself, having enjoyed the right to use the property, may not avoid its obligations to the leasing cotenant merely because fewer than all the cotenants have executed the lease.

## III.

■ WIA also argues that the court erred as a matter of law in granting appellees' proposed order for a money judgment without affording WIA a separate hearing or at least an opportunity to file an opposition. We disagree.

The trial court granted the motion for summary judgment without specifying an award of damages. Shortly thereafter, appellees' counsel wrote to the court, requesting an order for a money judgment of $13,768.95 plus interest and costs.[9] The court issued this order the next day. Five days later, WIA's counsel wrote to the court opposing appellees' request.[10]

■ Contrary to WIA's argument, the trial court was not required to hold a second hearing or otherwise entertain WIA's opposition to the claimed judgment. The complaint had sought an easily computable money judgment, and WIA had had an adequate opportunity to contest the claimed amount of unpaid rent before summary judgment had been granted. *See supra* note 9. WIA's request to oppose the

---

**6.** There is no merit to WIA's contention that summary judgment was improper because of disputed issues of material fact.

**7.** Under some circumstances, a cotenant who leases out the entire premises must account to the nonleasing cotenants for rents received, commensurate with their interests. *In re Knox' Estate*, 52 Cal.App.2d at 350–351, 126 P.2d at 115 (tenant in common of real property is "liable to account to his co-tenants for all rents collected from third parties for the premises" (citations omitted)). *Accord Faust v. Faust*, 251 Ala. 35, 37, 36 So.2d 232, 233 (1948); *Finley v. Keene*, 136 N.J.Eq. 347, 354–355, 42 A.2d 208, 213 (N.J. Ch.1945). Some courts have held, however, that if a cotenant leases only his or her undivided interest in the common property, no such accounting is required. *E.g., Lake v. Reid*, 252 S.W.2d 978, 983 (Tex.Civ.App.1952).

**8.** The lessee of a single cotenant becomes a tenant in common with the other owners. *Goodwin v. Costello*, 240 Mo.App. 656, 661–662, 212 S.W.2d 804, 808 (1948); *Johnston v. De Lay*, 63 Nev. 1, 8–10, 158 P.2d 547, 551 (1945); *James v. Anderson*, 39 N.M. 535, 540, 51 P.2d 601, 604 (1935). Thus, some courts have held that a nonleasing cotenants *is* "entitled to the reasonable use, benefit, and possession of the common

property along with" the lessee. *Williams v. Sinclair Refining Co.*, 39 N.M. 388, 391, 47 P.2d 910, 911 (1935) (citations omitted).

**9.** The complaint requested judgment for $7,131.64 (representing arrearages between October 1, 1982, and February 28, 1983) "or such amount as may be found to be due and owing as of the date . . . judgment is entered, plus interest, costs and reasonable attorneys fees." Appellees submitted an affidavit with their motion for summary judgment establishing that the total amount due by date of judgment was $13,768.95. WIA was thus fully apprised of the claims against it.

**10.** In his letter, dated May 8, 1983, WIA's attorney objected to the entry of a monetary award on the ground that appellees should have amended their complaint to reflect the increased amount of unpaid rent requested. Even if the court had been under a duty to entertain WIA's untimely opposition, WIA's argument lacked merit; the complaint itself, without need for amendment, provided adequate notice of the basis of appellees' demand. *See supra* note 9. The passage of time merely resulted in the inevitable accumulation of further unpaid rent. WIA has not pursued on appeal its claim that the complaint should have been amended.

damages calculation came too late.[11]  We conclude that the court properly granted appellees' demand.

*Affirmed.*

11.  WIA also claims that because Gustave Ring was only part owner of the premises, he was entitled only to his pro rata share of the rent charged, not to the full amount specified in the lease.  WIA is wrong.  The fact that Gustave Ring leased the premises without joining his cotenants in the lease does not relieve WIA of its promise to pay the full amount of rent agreed upon.  Appellant has enjoyed the right to use of the entire premises (which Gustave Ring was entitled to convey) and accordingly cannot justly avoid its contractual obligation.  *Harms,* 132 Ill. at 108, 22 N.E. at 512; *see supra* note 5.