SOLON AUTOMATED SERVICES,
INC., Plaintiff,

v.

BORGER MANAGEMENT, INC., et
al., Defendants.

Civ. A. No. 89–149.

United States District Court,
District of Columbia.

Jan. 31, 1990.

As Corrected Feb. 7, 1990.

Alex J. Pires, Jr., Marc E. Miller, Jeffrey A. Knishkowy, McLeod & Pires, Washington, D.C., for plaintiff.

Richard W. Luchs, David P. Blackwood, Washington, D.C., for defendants.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

This case is before the Court on the motion by defendants Borger Management, Inc. and Jon Utley for summary judgment. In consideration of the motions, the oppositions and replies filed thereto, the arguments made at the hearing held on September 12, 1989, the supplemental briefs and for the reasons stated below, the Court shall grant defendants' motion for summary judgment.

## I. PROCEDURAL BACKGROUND

The plaintiff is Solon Automated Services, Inc. ("Solon"), a business which supplies coin-operated washers and dryers to apartment buildings, military bases and universities. Solon leases space, installs its coin-operated laundry equipment, maintains the equipment and collects monies inserted in the equipment by users.

Defendant Jon Utley is an owner of the subject property known as the Windsor House (the "Property"). Defendant Borger Management, Inc. ("Borger") has been the owners' managing agent from April 1, 1986, until the present. On September 1, 1983, Solon executed a lease with the Utleys' prior managing agent, Shannon &

Luchs Company. The initial term of the lease began November 1, 1983, and ran for a term of five years. In addition to the initial five year term, the lease contained a provision which allowed for automatic self-renewing terms of five years each, unless notice of termination was given within the first month of the final year of the lease.

This motion arises out of a controversy between Solon and the defendants as to their respective rights regarding continued operation of laundry equipment owned by Solon. Solon requests declaratory relief to maintain its occupancy of the laundry rooms at the Windsor House without interference from the defendants until October 31, 1993. Solon's request for a temporary restraining order and permanent injunction, as well as its claim for wrongful eviction upon which the requests for injunctive relief were based, were resolved by the stipulation entered into by the parties on January 23, 1989. The parties agreed that Utley and Borger would allow Solon's laundry equipment to be reconnected and remain connected until the conclusion of the litigation or the termination in November 1992 of the lease agreement.

Utley and Borger filed the pending motion for summary judgment on March 17, 1989. Solon opposed this motion on April 4, 1989. On September 12, 1989, the Court ordered parties to file supplemental memoranda.

## II. FACTUAL BACKGROUND

On September 1, 1983, Solon executed a lease for the installation and operation of laundry equipment for the use of tenants of the building located at 1444 Rhode Island Ave., N.W., Washington D.C., known as the Windsor House. The initial term of the lease began November 1, 1983, and ran for a term of five years. The lease was signed by an employee of Shannon & Luchs Company, the managing agent of the property at that time. The owners of the property, Utley and his wife, Ana Utley, did not sign the lease.

The dispute concerns the interpretation of the automatic renewal clause in the lease agreement. In addition to the five year term, the lease contained a provision which provided:

> This lease shall be automatically renewed for successive five (5) year periods unless one of the parties hereto shall notify the other, within the first month of the final year of Lessee's occupancy, of its intent to terminate this Lease. Said notice shall be in writing, by registered mail, return receipt requested, first class, to the last known address of the other party.

Thus, according to the lease, if either party decided to terminate the lease after its initial term, it was required to provide written notice to the other party during November, 1987.

During the month of November, 1987, neither party to the lease gave written notice to the other expressing its intent to terminate the lease following the initial term. In November, 1988, Borger wrote to Solon requesting that it remove its equipment from the Windsor House before December 31, 1988. Solon argues that no timely notice of termination was provided during the initial term and that the lease has now been extended for an additional five year term. Jon Utley and Borger contend that notice of termination is unnecessary in that the renewal clause is without force and effect and against the public policies of the District of Columbia, pursuant to D.C.Code § 45–306. Utley and Borger further contend that the lease has expired and that the plaintiff is now a tenant at sufferance.

## III. ANALYSIS

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, show that there is no genuine issue of material fact." The Supreme Court has provided substantial guidance as to when a court should grant summary judgment in its decision in *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Celotex Corporation v. Catrett*, 477 U.S. 317, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986). By its own terms, the standard for summary judgment

> provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.

*Anderson,* 477 U.S. at 247, 106 S.Ct. at 2510. There is no genuine issue of material fact when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

Utley and Borger assert that there is no genuine issue as to whether Utley signed the lease and pursuant to D.C.Code § 45–306, they are entitled to summary judgment as a matter of law. The defendants further argue that they are not estopped from denying the validity of the lease as they did not induce Solon to make expenditures to its disadvantage or participate in fraudulent activity. The Court finds that no genuine issue of material fact exists. It is undisputed that neither Jon Utley nor Ana Utley signed the lease.

### A. D.C.Code § 45–306

At issue in this case is whether the automatic renewal clause in the lease is effective given that neither Utley signed the lease with Solon. D.C.Code § 45–306, provides:

> No estate ... for a longer term than one year, in any real property, corporeal or incorporeal, in the District of Columbia, or any declaration or limitation of uses in the same, for any of the estates mentioned, shall be created or take effect, except by deed signed and sealed by the grantor lessor or declarant, or by will.

██ Solon argues that since the term "owner" does not appear in section 45–306, the statute cannot be read to require the owner to physically sign a lease. Solon asserts that by using the term "lessor," Congress intended a broader meaning than the actual owner of the property. In con-

trast, the defendants interpret § 45–306 to mean that the life of the lease is limited to one year unless signed by the actual owner. They rely on *Paul v. Holloway,* 124 A.2d 587 (D.C.1956). The Court agrees with the defendants' interpretation of the statute.

██ *Paul* involved an action against a tenant for nonpayment of rent under a three-year lease. The defendant tenant claimed that the lease was invalid because it was for more than one year and was not signed by the owner. The plaintiff, a rental agent, had signed the lease as "broker." The District of Columbia Court of Appeals interpreted the language of the statute [1] to mean that any lease of property in the District of Columbia must be signed by the actual owner of the property, otherwise the lease agreement is limited to one year. This is true even in the event that the lease is signed by the owner's agent, who is properly authorized by the owner to execute the lease. *Paul,* 124 A.2d at 589.

The *Paul* court reasoned that despite any contractual authority given to him by the owner, the agent could not, under the statute, make a conveyance of the real estate, because he had no interest to convey. *Id.* This same reasoning was followed by the District of Columbia Court of Appeals in *Washington Ins. Agency, Inc. v. Friedlander,* 487 A.2d 599 (D.C.App. 1985) when it held that a co-owner of property could convey his *own* interest as owner-lessor but could not bind the interest of the other co-owners, even though they authorized him to sign as their agent. *Id.* at 601.

Solon attempts to distinguish *Paul* by noting that the Court referred to the plaintiff as "nothing more than a rental agent," *Paul,* 124 A.2d at 589, whereas in this case, Shannon & Luchs was the managing agent of the Windsor House. Solon argues that Shannon & Luchs was not merely a company dealing with rentals that otherwise had nothing to do with the property. Instead, Shannon & Luchs was the company that handled the day-to-day operations of their

---

**1.** The predecessor to Section 45–306 was then    codified as Section 45–106.

Windsor House. Solon states that to conclude that such a company could not sign a multi-year lease as "lessor" would be to defy logic and the realities of day-to-day commercial real estate operations. Solon contends that if defendants impractical reading of *Paul* were followed, then undoubtedly hundreds, if not thousands, of multi-year commercial leases entered into by management companies in the District of Columbia on behalf of owners would thereby be rendered null and void. *See* Plaintiff's Opposition to Defendants' Motion for Summary Judgment at 7.

The Court finds that when Shannon & Luchs signed the lease it was merely acting as an agent for the Utleys and thus had no interest to convey. Consequently, under *Paul v. Holloway*, 124 A.2d 587 (D.C.1956) and *Washington Ins. Agency, Inc. v. Friedlander*, 487 A.2d 599 (D.C.App.1985), the effect of the lease was limited to one year. The Court recognizes that applying this reasoning flies in the face of industry practice. Nonetheless, it is established law in our jurisdiction.

### B. Equitable Estoppel

Solon has failed to establish a genuine issue of material fact on the applicability of equitable estoppel. Solon argues that even if defendants' reading of § 45–306 were correct, and Shannon & Luchs did not have authority to bind Utley, the defendants are estopped from denying the validity of the lease, thereby rendering § 45–306 inapplicable. However, Solon's argument goes to whether it reasonably relied on the lease running for the *initial* five year term, which does not form the basis for the present suit.[2] Solon has not demonstrated that there are questions of fact as to whether it reasonably relied to its detriment on the fact that the lease would be renewed. The only time frame within which he may have been induced to make expenditures to his disadvantage was the one year interval between November, 1987 (the time when notice should have been given to prevent automatic renewal) and November, 1988 (the time Borger wrote to Solon requesting that it remove its equipment from Windsor House). Prior to November 1987, Solon could not be assured that the lease would be renewed and thus could not have reasonably relied on its renewal. Consequently, Solon has failed to establish a material factual dispute on the applicability of equitable estoppel.

### IV. CONCLUSION

The Court finds it appropriate to grant summary judgment for the defendant. The clear language of D.C.Code § 45–306 compels this conclusion. While the Court acknowledges that its ruling today does not comport with business practices, it is up to the Council of the District of Columbia, not this Court, to amend the statute. Until such time, the Courts are bound by this legislation. *See Myco, Inc. v. Super Concrete Co., Inc.*, 565 A.2d 293, 301 (D.C. 1989).

Based on the foregoing, the Court shall grant defendants' motion for summary judgment.

---

**2.** Even assuming that defendants are estopped from denying the validity of the initial five year contract, Solon has already enjoyed the benefits of this contract. As the lease did indeed run for the initial five year term, the point is moot.