Filed 2/24/22  Hurd v. Hurd CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JEFFREY LAURENCE HURD,<br><br>     Plaintiff and Appellant,<br><br>     v.<br><br>DAVID WILLIAM HURD, as Trustee, etc.,<br><br>     Defendant and Respondent. | B309280<br><br>(Los Angeles County Super. Ct. No. 18STPB10655) |

APPEAL from an order of the Superior Court of Los Angeles County.  Clifford L. Klein, Judge.  Reversed and remanded.

Zarmi Law and David Zarmi for Plaintiff and Appellant.

Thomas Vogele & Associates, Thomas A. Vogele and Timothy M. Kowal for Defendant and Respondent.

_____

The question in this case is whether a California court lacks personal jurisdiction over David William Hurd (respondent), trustee of The Hurd Family Trust (Hurd Trust), because he is domiciled in Colorado. Based on the facts of this case, we conclude that California has specific jurisdiction over respondent and the trial court erred when it granted respondent's motion to quash service of the summons in connection with the probate petition filed by Jeffrey Laurence Hurd (appellant). We reverse the trial court's order.

Because the trial court never ruled on respondent's motion to stay or dismiss based on the inconvenient forum doctrine, we remand the matter to the trial court to rule on that motion in the first instance.

## FACTS

### The Hurd Trust and the Hurd Family

William and Linda Hurd established the Hurd Trust on June 15, 1992, in Pasadena, California. It was funded with financial assets, real property in California, and real property in Colorado. They were the original trustees as well as the settlors. Appellant and respondent are the children of the settlors.

During the joint lifetime of the settlors, the trustees were required to pay the settlors the entire income of their community estate at least once a quarter. If the income was insufficient, the trustees were required to apply as much of the principal of the trust as necessary for the settlor's health, maintenance, comfort, and welfare.

Upon the death of the first settlor, the living settlor was required to divide the trust estate into three separate trusts designated as Trust A, Trust B and Trust C. The trustee was obligated to utilize the interest and principal for the benefit of the

2

living settlor, subject to certain general provisions common to each of the sub-trusts.

Upon the death of the living settlor, the successor trustee was required to pay funeral expenses as well as various debts and taxes, then combine the sub-trusts and divide them into as many equal shares as there were children of the settlors then surviving. The Hurd Trust specified that "[a]ny share allocable to a living child of Settlors shall be distributed to such living child, FREE OF TRUST."

Respondent was listed as the successor trustee if the settlors died or became incapacitated.

Upon Linda Hurd's passing in 1993, the Hurd Trust became irrevocable.

**William Hurd's Promissory Note**

William Hurd moved to Nevada in 2008 where he married a woman named Elaine and formed the Hurd-Starr Family Trust. He transferred $432,740 from the Hurd Trust to the Hurd-Starr Family Trust in exchange for a promissory note in favor of the Hurd Trust.

The promissory note was secured by a deed of trust on real property owned by the Hurd Trust in Steamboat Springs, Colorado.

**The Domiciles of Appellant and Respondent**

While appellant lives in California, respondent is domiciled in Colorado.

**Administration of the Hurd Trust After Respondent Becomes the Successor Trustee**

Respondent became trustee of the Hurd Trust after William Hurd died in Nevada in 2016.

3

On January 7, 2017, respondent executed two certifications of trustee in Westminster, Colorado, one for Trust B and one for Trust C of the Hurd Trust. He filed a 2016 income tax return for the Hurd Trust with the Colorado Department of Revenue.

On September 6, 2017, respondent terminated the Hurd Trust's Pasadena, California attorneys, the law firm of Stone & Doyle. On March 2, 2018, respondent's trust attorneys in Colorado, Fairfield and Woods, filed Trust Registration Statements for "Marital Trust 'B' of the [Hurd Trust]" and "Family Trust 'C' of the [Hurd Trust]." They listed a Westminster, Colorado address for respondent and stated that the records of the Hurd Trust were being kept at the principal place of administration, which was also in Westminster, Colorado.

At some point, appellant and respondent entered an oral agreement to maintain property owned by the Hurd Trust in La Cañada Flintridge, California as income property until it was vacated by its current tenant. The tenant stated that he did not intend to vacate until his children graduate from school in 2027.

In 2018, respondent filed a 2017 Colorado income tax return for the Hurd Trust, mailed appellant a K-1 form from Colorado, and filed interim accountings in a Colorado court.

**Respondent's California Probate Petition**

In 2017, respondent discovered that the Hurd Trust held a promissory note made by the Hurd-Starr Family Trust in the amount of $432,740. His Long Beach, California attorney filed a petition to open probate and a creditor claim in the Los Angeles Superior Court. The creditor claim stated: "William J. Hurd transferred assets while trustee of the [Hurd Trust] to his own account or to the Hurd-Starr Family Trust[] contrary to law and

4

in breach of his fiduciary duties and the terms of the [Hurd Trust] during the time period of October 1993 through November 17, 2016[,] in the sum of $432,740.00[.]" The petition stated: "The [Hurd Trust] is administered at 225 S. Lake Ave., Ste. 300, Pasadena, CA 91101." Respondent signed the petition on November 16, 2017.

Respondent withdrew the probate petition and creditor claim after realizing William Hurd's probate needed to be opened in Nevada instead.

**Assets of the Hurd Trust**

The property in Steamboat Springs was sold in October 2017. The La Cañada Flintridge property became the sole asset of the Hurd Trust.

**Disagreement Between Appellant and Respondent**

Respondent believed, as a fiduciary, that he had to pursue recovery of the Hurd Trust's assets by trying to collect on the promissory note. Appellant was opposed to having the Hurd Trust pursue legal action. Respondent was willing to forego legal action, but only if appellant legally absolved respondent of his duty to pursue trust assets. Appellant refused to absolve respondent.

**The Nevada Litigation; Respondent's Loan of $100,000 to the Hurd Trust**

On behalf of the Hurd Trust, respondent sued the Hurd-Starr Family Trust in Nevada to enforce the promissory note.

By December 2017, the litigation had depleted the Hurd Trust's cash. Counsel for the Hurd Trust wrote to appellant explaining that the trust had expended all the proceeds in Trust B from the sale of the Colorado property in Steamboat Springs to pursue the litigation. It needed to raise at least $100,000 to

5

continue the litigation or it would have to dismiss the action. Counsel wrote: "[Y]our options are either to (1) sign the indemnification so [respondent] can drop the claims or (2) send [respondent], as Trustee, $50,000 to pursue the claims." Appellant did not respond.

On April 19, 2018, respondent loaned $100,000 to himself as trustee of the Hurd Trust, Trust C. The loan was secured by a deed of trust on the La Cañada Flintridge property. The deed of trust stated that the respondent, as trustee of the Hurd Trust, Trust C, promised to pay the debt with interest in regular periodic payments, and to pay the debt in full by April 2028.

Respondent recorded the deed of trust with the Recorder's Office of Los Angeles County.

**Appellant's California Probate Petition**

In November 2018, appellant filed a petition in probate court.

Per the petition, appellant and respondent met in 2016 to discuss the La Cañada Flintridge property. They orally agreed to hold the property in the Hurd Trust and split the rental income until their tenants moved out. They anticipated that the tenants would stay for seven more years until their children finished school. In reliance on respondent's promises, appellant allowed respondent to stay on title to the property without distribution under the Hurd Trust.

Respondent breached the oral agreement and his fiduciary duties to appellant when he borrowed $100,000 to fund the litigation in Nevada and secured the loan with the La Cañada Flintridge property by executing a deed of trust. Additionally, respondent breached his fiduciary duties by: demanding that appellant either contribute $50,000 to the Nevada litigation or

6

sign an indemnification agreement and release in exchange for respondent dropping the Nevada litigation; failing to provide an accounting of the $100,000; converting trust assets to his own use; distributing trust assets to himself and others; allowing others to use or obtain trust assets; and failing to avoid conflicts of interest in trust transactions.

Appellant sought the following relief: (1) an accounting, (2) an order surcharging respondent for his breaches of fiduciary duty; (3) an order imposing a constructive trust on all trust property to which appellant is entitled but is in respondent's possession; (4) either an order compelling respondent to distribute an unencumbered 50 percent interest in the La Cañada Flintridge property to appellant or an order appointing appellant or a third party as a temporary trustee to take possession of the property and administer the trust; and (5) an award of double damages for the wrongful taking, concealing and disposing of property.

Appellant filed a lis pendens.

**Respondent's Challenge to Jurisdiction and Forum**

Respondent filed a motion to quash the service of summons or, alternatively, to stay or dismiss the action based on the inconvenient forum doctrine.

He cited *Pavlovich v. Superior Court* (2002) 29 Cal.4th 262 (*Pavlovich*) to support the motion to quash and argued that he "has administered the trust exclusively in the State of Colorado and has complied with all reporting and accounting requirements in Colorado as required by Colorado law. There is absolutely no evidence that [r]espondent purposefully directed any activity whatsoever to the State of California except to record one deed of trust." Next, as to the inconvenient forum doctrine, he argued:

7

"The Courts of Colorado have been exercising jurisdiction continuously since January[] 2017. There is a second action pending in Nevada involving the same issue as raised in this California petition. There is no basis for this court to accept jurisdiction as Colorado law must be applied or Nevada law given the preexisting factual basis of the disputed [promissory] note and deed of trust."

Respondent supported his motion with his declaration as well as the trust registration documents executed in Colorado, the Hurd Trust's court filings in Colorado, and the tax returns it filed in Colorado.

Appellant filed an opposition.

In a declaration submitted in support of the reply, respondent stated that the Hurd Trust would be "greatly inconvenienced if required to defend this litigation in California. Declarant's attorneys and financial agents [and] tax preparers are all situated in Jefferson County[,] Colorado and/or Clark County[,] Nevada. Litigation in California will require all such individuals to travel to testify at great expense to the [Hurd Trust]. The applicable law governing the actions of [respondent] as trustee are those of Colorado. Potentially [respondent] would be required to have the Trust pay for travel and lodging expense[s] of Nevada counsel as well. By contrast, [appellant] as an individual can litigate his claim in Colorado which is the venue currently exercising jurisdiction over the [Hurd Trust] without having to transport any other witnesses. The court in Colorado can apply its laws to these facts much easier than a court in California[.]"

The trial court requested that the parties file additional evidence regarding whether a Colorado court could adjudicate

appellant's claims and continued the motion from March 7, 2019, to September 9, 2019.

The parties submitted competing expert declarations regarding the propriety of appellant pursuing his legal claims in a Colorado court. They agreed that Colorado could not enter an order directly affecting title in California, but respondent's expert opined that a Colorado court could indirectly affect title by entering an in personam order that required a defendant as a constructive trustee to transfer specific property to a plaintiff.

**The Order of Dismissal**

On August 14, 2020, the probate court entered an order stating, "The Motion to Quash Service of Summons is granted. The [probate court] lacks jurisdiction over the trust because the courts of the State of Colorado are already exercising jurisdiction." The probate court went on to explain that if "the Colorado court decide[s] to defer to California on issues relating to the trust administration of the property in California, this court could assert jurisdiction. At this time, however, this court is transferring the original petition to Jefferson County, Colorado."

The probate court cited the law regarding personal jurisdiction as well as the inconvenient forum doctrine. It explained that appellant failed to prove that personal jurisdiction would comport with fair play and substantial justice because: it would be strange and anomalous for a California court to remove a trustee who is appearing as the trustee in another state; and it would be strange and anomalous if the probate court disapproved of disbursements and other actions which the Colorado court has already approved, or vice versa. The probate court relied on *Schuster v. Superior Court* (1929) 98 Cal.App. 619 (*Schuster*) and

9

stated that if "the Colorado courts have exercised jurisdiction over the Trust, this court cannot assert jurisdiction. This [court] cannot and should not assert jurisdiction, and the motion to quash should be granted."

Further, the probate court added: "The [probate court] does not automatically lack jurisdiction simply because [respondent] lives in and administers the trust from Colorado. Although jurisdiction is always proper when the place of administration is in California, the Law Revision Commission comments to Probate Code § 17004 make clear that a court can exercise jurisdiction over a trust holding real property in California, regardless of whether the trust happens to be administered from elsewhere. Here, however, Colorado courts have already been exercising jurisdiction over the trust. . . . Even if the only filings in Colorado so far have been routine administrative and accounting documents, rather than any contested pleadings, such filings must be sufficient that the Colorado courts have exercised jurisdiction over the trust. This conclusion does not require any deep understanding of Colorado law, but is a matter of logic. If the Colorado courts have accepted the filings of accounting and administrative documents, then those courts are the proper place to contest those accountings and similar filings. Such a contest would necessarily involve the Colorado courts making orders as to the trusteeship and the internal affairs of the Trust, and such issues are therefore implicitly raised by the filing of the accountings and similar documents. Because those filings, contested or not, concern the internal affairs of the Trust, the Colorado courts are exercising jurisdiction over all aspects of the Trust."

On September 11, 2020, the probate court entered a formal order of dismissal.

**Appellant's Motion for Reconsideration**

Appellant moved for reconsideration, arguing that *Van Buskirk v. Van Buskirk* (2020) 53 Cal.App.5th 523 (*Van Buskirk*) established that California has personal jurisdiction over the Hurd Trust. The motion was denied.

This appeal followed.

## DISCUSSION

### I. Standards of Review.

We review a trial court's determination of personal jurisdiction on an independent basis. When the evidence submitted below is in conflict, we review the trial court's express and implied findings under the substantial evidence standard. (*HealthMarkets, Inc. v. Superior Court* (2009) 171 Cal.App.4th 1160, 1167–1168.)

A trial court's decision to dismiss a case based on the inconvenient forum doctrine is reviewed using multiple standards. A dismissal is not appropriate unless there is a suitable alternative forum available to the parties, and the analysis of that issue is subject to de novo review. In deciding whether to dismiss, the trial court must balance private and public interests. The way it balances those interests is reviewed for an abuse of discretion. (*Morris v. AGFA Corp.* (2006) 144 Cal.App.4th 1452, 1464.) Finally, the factual findings underlying a trial court's decision are scrutinized for substantial evidence. (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 1006.)

## II. The Motion to Quash Service of the Summons.

A. <u>Relevant Law</u>.

Pursuant to Code of Civil Procedure section 410.10 and Probate Code section 17004, a probate court may exercise jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10.)

The federal Constitution permits a state to exercise personal jurisdiction over a defendant if the defendant has sufficient "minimum contacts" with the forum such that "maintenance of the suit did not offend traditional notions of fair play and substantial justice. [Citations.]" (*Int'l Shoe Co. v. Washington* (1945) 326 U.S. 310, 316.) Personal jurisdiction may be either general or specific. (*Thomson v. Anderson* (2003) 113 Cal.App.4th 258, 265–266 (*Thomson*).)

A defendant may be subject to specific personal jurisdiction if (1) he or she has purposefully availed himself or herself of forum benefits, (2) the controversy is related to or arises out of the defendant's contacts with the forum; and (3) the exercise of jurisdiction would comport with fair play and substantial justice. (*Thomson, supra*, 113 Cal.App.4th at p. 265; *Pavlovich v. Superior Court, supra,* 29 Cal.4th at p. 269.)

"[T]he determination of the reasonableness of the exercise of jurisdiction in each case will depend on an evaluation of several factors. A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'" (*Asahi Metal Industry Co. v.*

*Superior Court* (1987) 480 U.S. 102, 113 (*Asahi*).)  There are no "talismanic jurisdictional formulas; 'the facts of each case must [always] be weighed' in determining whether personal jurisdiction would comport with 'fair play and substantial justice.'" (*Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 485–486.)  Summed up in total, the question is whether, "the defendant's conduct and connection with the forum State are such that he [or she] should reasonably anticipate being haled into court there." (*World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 297.)

Under Probate Code section 17004, "California courts may exercise jurisdiction to determine matters concerning trust property located in California—particularly land—even if the trust is administered elsewhere. [Citation.]" (*Van Buskirk*, *supra*, 53 Cal.App.5th at p. 531.)

B. <u>Analysis</u>.

The trial court's jurisdictional analysis was erroneous because it did not apply the relevant law.  Rather, it found a lack of personal jurisdiction based on *Schuster*, a case that is wholly inapposite to the issue.

The trial court's conclusion that it "lacks jurisdiction over the trust because the courts of the State of Colorado are already exercising jurisdiction over the trust," and that it "could assert jurisdiction" if the Colorado courts decide to defer to California "on issues relating to the trust administration of the property in California" establish that the trial court implicitly recognized that it could, in fact, exercise personal jurisdiction under constitutional principles.

An application of constitutional principles establishes that California has personal jurisdiction.

13

1. *Respondent's Purposeful Availment.*

As a preliminary matter, we note that the Hurd Trust availed itself of the benefits of California by owning the La Cañada Flintridge property. (*Buchanan v. Soto* (2015) 241 Cal.App.4th 1353, 1363 [by owning properties in California, defendant availed himself of the benefits and protections of the laws of California]; *Gognat v. Ellsworth* (W.D.Ky., Oct. 26, 2009, Case No. 5:08-CV-00100) 2009 U.S.Dist. Lexis 99456 *16 ["One who owns real property in a state purposefully avails themselves of the benefits and protections of the laws of that state"].) Moreover, the Hurd Trust is protected by various California laws. For example, it is protected by landlord-tenant laws plus the provisions of California's judicial and nonjudicial foreclosure laws (Code Civ. Proc., § 726 et seq.; Civ. Code, § 2924 et seq.) in connection with any secured loans. The Hurd Trust is generally governed by the Probate Code (Prob. Code, § 15200 et seq.), and the Hurd Trust specifies with respect to the administrative powers of the trustees that, except as otherwise provided, "the determination of all matters with respect to what is principal and income of the trust estate and the apportionment and allocation of receipts and expenses between these accounts shall be governed by the provisions of the California Revised Uniform Principal and Income Act."

Now we turn to respondent.

We conclude that he also purposefully availed himself of the benefits and protections of California. He did so by: (1) being the trustee of a California trust that owns California real estate as its only asset; (2) being a trustee who collected, and a beneficiary who received, the monetary benefits of the California property owned by the trust; (3) entering an oral agreement with

14

a California resident regarding the management of California real property; (4) causing the trust to borrow money against California real property; and (5) recording a deed of trust with the Recorder's Office of Los Angeles County to secure the loan. (See *Van Buskirk*, *supra*, 53 Cal.App.5th at p. 532 [respondent purposefully availed herself of California laws by "transacting about land in California" as the trustee and beneficiary of a trust that was created and managed in California, that was governed by California law, and that held real property interests in California].)

   2. *Connection Between the Respondent's Contacts with California and the Controversy*.

  Respondent's contacts with California are connected to the claims in appellant's petition.

  The petition contains requests for an accounting, a surcharge and double damages directly related to respondent's decision to cause the Hurd Trust to borrow money and encumber the La Cañada Flintridge property with a deed of trust recorded in Los Angeles County. Also, based on allegations that respondents violated his fiduciary duties with respect to the loan, the petition seeks: (1) an order imposing a constructive trust on property to which appellant is entitled, which would include 50 percent of the La Cañada Flintridge property; and (2) an order compelling respondent to distribute an unencumbered 50 percent interest in the La Cañada Flintridge property to appellant or an order appointing a temporary trustee.

  To the degree the petition raises other issues such as respondent's alleged failure to provide an accounting and his demand that appellant pay $50,000 or sign an indemnification and/or release agreement, these claims are indirectly related to

respondent's management of the La Cañada Flintridge property. If it were not for the Hurd Trust owning California property, the trust would no longer exist and there would be no basis for the parties' dispute.

The question is whether there is sufficient relatedness. The "'relatedness requirement is satisfied if 'there is a substantial nexus or connection between the defendant's forum activities and the plaintiff's claim.'" (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1068.) We conclude that there is a substantial nexus because appellant's request for damages, a constructive trust, and title and/or appointment of a new trustee are inextricably entwined with the contention that respondent improperly managed and encumbered the La Cañada Flintridge property.

3. *Fair Play and Substantial Justice.*

There is no basis in the record to conclude that litigating in California will cause the respondent undue burden. He previously filed a probate petition in California, and he is actively litigating in Nevada. Litigating in California would cause respondent to incur some extra expenses, but that is true with any foreign defendant.

As the forum state, California has an interest in ensuring that California real property is not mismanaged to the detriment of a beneficiary of a trust that was created in California. Appellant has a strong interest in obtaining relief from what he alleges is respondent's breach of contract and fiduciary duty. We conclude that a California court familiar with California probate issues would be the most efficient forum for the parties to litigate any issues of California law. To the degree Colorado law dictates the parameters of respondent's fiduciary duties, there is no basis

16

to conclude that a California court cannot apply Colorado law. Finally, the social policies regarding the administration of California trusts, the management of California property, and the protection of California beneficiaries outweigh the social policies that Colorado may have with respect to governing trustees who are responsible for managing California trusts that own California property.

After examining appellant's forum contacts, the connection between those forum contacts and the controversy, and after considering the private and public interests, we conclude that respondent could have reasonably anticipated being sued in California. The exercise of personal jurisdiction comports with fair play and substantial justice.

*Schuster*, the case relied upon by the trial court, is not germane to the issue presented. In that case, a resident of Apache County, Arizona died in 1911 and his will was admitted into probate in that county. The will provided that a large portion of the estate would be given to three trustees to pay income to certain beneficiaries. Some of the beneficiaries filed petitions seeking an accounting, challenging the distribution of assets, and seeking the appointment of a new trustee. The Arizona probate court entered an order settling the account, and one the parties appealed. Some of the beneficiaries filed an action in California in which they sought an accounting, the removal of the trustee, etc. The defendants filed a writ petition seeking to prevent the California court from holding the petitioner in contempt for failing to answer questions during his deposition. The petitioner argued that the California court

17

lacked subject matter jurisdiction or that, as a matter of comity,[1] the California court should not exercise jurisdiction over the case. (*Schuster*, *supra*, 98 Cal.App. at p. 621.)

The *Schuster* court concluded that the California court should not take jurisdiction and issued a peremptory writ. (*Schuster*, *supra*, 98 Cal.App. at p. 627.) It noted that "a strange and anomalous situation would surely result if the California courts should remove a trustee who is appearing as such in Arizona, especially if the latter court should be of the opinion that he should not be removed. Furthermore, all of the parties to the action pending in the [California] court, with the exception of [a] defendant corporation, have appeared in and submitted their contentions in the [Arizona court]. Dissatisfaction on the part of litigants with the orders and decrees of [the Arizona] court should not prompt the courts of a sister jurisdiction to attempt an interference." (*Id*. at pp. 623–624.)

Simply put, *Schuster* offers no guidance on the issue of personal jurisdiction.

## III. The Motion to Stay or Dismiss the Petition Based on the Inconvenient Forum Doctrine.

"When a court upon motion of a party . . . finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just." (Code Civ. Proc., § 410.30, subd. (a).) A moving party defendant has the

---

[1] Based on comity, a trial court should abate an action in California when an action covering the same subject matter was filed in another jurisdiction first. (*Simmons v. Superior Court* (1950) 96 Cal.App.2d 119, 122–123.)

burden of proof.  (*Fox Factory, Inc. v. Superior Court* (2017) 11 Cal.App.5th 197, 204.)

In the first step of the analysis, the trial court determines whether there is a suitable alternative forum.  (*Ford Motor Co. v. Insurance Co. of North America* (1995) 35 Cal.App.4th 604, 610 (*Ford Motor*).)  If one exists, the trial court must consider the private interests of the litigants and the interests of the public in retaining the action in California.  The private interest factors "'are those that make trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process for attendance of unwilling witnesses.  The public interest factors include avoidance of overburdening local courts with congested calendars, protecting the interests of potential jurors so that they are not called upon to decide cases in which the local community has little concern, and weighing the competing interests of California and the alternate jurisdiction in the litigation. [Citations.]' [Citations.]"  (*Ibid*.)

A trial court properly exercises discretion when its decision falls within the range of options available under the governing legal criteria.  (*Ford Motor*, *supra*, 35 Cal.App.4th at p. 610.)  Unless the weighing of private and public factors tips strongly toward the defendant, case law holds that the plaintiff's choice of forum should rarely be disturbed.  (*Id*. at pp. 610–611.)  More specifically, a "California plaintiff's choice of forum" should not be disturbed "except for weighty reasons."  (*Klein v. Superior Court* (1988) 198 Cal.App.3d 894, 901; *Gould, Inc. v. Health Sciences, Inc.* (1976) 54 Cal.App.3d 687, 693 ["One limitation on the imposition of the doctrine has been recognized in the decisional

19

law; it ordinarily may not be invoked to deprive a resident plaintiff of access to the California courts"].) The law is settled. California courts "have a duty to ensure fair treatment to California plaintiffs. [Citations.]" (*Berg v. MTC Electronics Techs. Co.* (1998) 61 Cal.App.4th 349, 356.)

Here, the trial court did not rule on respondent's motion to dismiss based on the inconvenient forum doctrine.

Typically, an order can be affirmed on any ground in the record "because our job is to review the trial court's ruling, not its reasoning. [Citation.]" (*People v. Financial Casualty & Surety, Inc.* (2017) 10 Cal.App.5th 369, 386.) But that rule does not apply here because the trial court only ruled on the motion to quash, which presented a question of law. It did not issue a discretionary order granting the motion to stay or dismiss. Thus, there is nothing for us to review, and no basis for us to analyze the issues. ""If a ruling which might have been made as a matter of discretion is based entirely upon other grounds, the appellate court will not consider whether the ruling would constitute a proper exercise of the discretionary power."' [Citation.]" (*Bergin v. Portman* (1983) 141 Cal.App.3d 23, 28.)

The matter must be remanded to the trial court to rule on respondent's motion to stay or dismiss based on the inconvenient forum doctrine.

20

**DISPOSITION**

The order granting respondent's motion to quash for lack of personal jurisdiction is reversed. On remand, the trial court shall consider and rule on respondent's motion to stay or dismiss based on the inconvenient forum doctrine. Appellant shall recover his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, Acting P. J.
ASHMANN-GERST

We concur:

_____, J.
CHAVEZ

_____, J.
HOFFSTADT

21